## NICHOLS. VS. NICHOLS.

1. BOUNTY LANDS — CONVEYANCE. — By the fourth section of the act of congress of May 6, 1812, revived and continued by subsequent acts, claims for military bounties for services in the war of 1812 were not assignable or transferable in any manner whatever until after a patent had been granted for the lands, and " all sales, mortgages, contracts or agreements of any nature whatever, made prior thereto, for the purpose or with the intent of alienating, pledging, or mortgaging any such claim, were declared and were to be held null and void, and by one of the subsequent acts it was provided that the certificate of location of such claim should not be assignable, but that the patent should in all cases issue in the name of the person originally entitled to the land, or his heirs, etc.: *Held*, that a power of attorney from one entitled to such bounty lands, given before any patent issued, authorizing the grantee of the power " for his own use and benefit to locate the warrant therefor, and to sell the land and receive payment therefor," and a subsequent conveyance thereof under such power, were in contravention of the said acts of congress and void.

(3 Chand., 189.)

ERROR to the County Court for *Fond du Lac* County.

*Walter H. Nichols* brought an action of trespass, *quare claus-um fregit*, against *John Nichols*, who pleaded by way of justifi-cation, title to the *locus in quo* in himself. The plaintiff gave in evidence a patent for the premises from the United States to one Kasey, on account of services as a soldier in the army, dated February 14, 1846, and issued under the act of congress of July 27, 1842, and also the record of a deed of the same lands from Kasey and wife to himself, dated June 20, 1849, and recorded October 10, 1849, and also proof as to the amount of damages.

The defendant offered in evidence the record of a power of attorney from said Kasey to one Bradbury, purporting to au-thorize him for his own use and benefit to locate the land war-rant which the said Kasey had received for his military services, and to sell the lands and receive payment therefor, containing a power of substitution dated August 11, 1843, and recorded October 6, 1849 ; this was objected to on the ground that it was executed previous to the issuing of the patent to Kasey, and was therefore void, but it was received; also the record of a power of attorney from said Bradbury to E. D. Holton, dated April 1, 1845, recorded October 6, 1849. It purported to have been witnessed by only one witness, and to have been executed in the state of Maine, and after reciting the said power of attor-ney from Kasey to Bradbury, it purported to authorize and empower Holton, for his sole use and benefit, to locate said land warrant, and to sell the lands located and to receive pay-ment for the same; but it was objected, for the reason that, as before stated, the power from Kasey to Bradbury was void, so this power which purported to be executed by virtue of it was also void, and because it purported to have been witnessed by only one witness, and therefore the record of it was not evi-dence. The court overruled the objections. The defendant then offered in evidence three deeds of said premises, all recorded October 6, 1849 ; the first from Kasey, by E. D. Holton as his attorney, to David McDougal, dated August 8, 1849 ; the sec-

ond from McDougal and wife to Joseph E. Garland, dated August 22, 1849, and the third from said Garland to the defendant, all of which were objected to for reasons urged against said powers of attorney; that the deed from Kasey, by Holton as his attorney, to McDougal, was void on account of said defects in, and objections to said powers of attorney, and that therefore neither of said deeds passed any title to the premises; but the court overruled the objections, and held that the powers of attorney and said deeds were valid, and so the defendant had a verdict and judgment, and the plaintiff brought his writ of error.

· *Gillett & Eaton*, for plaintiff in error, claimed that the record of the power of attorney or substitution from Bradbury to Holton, purporting to have been witnessed by only one witness, was improperly received in evidence (Ter. Stat., 179, 180); that the deed from Kasey, by Holton as his attorney, to McDougal, and those from McDougal to Garland and from Garland to the defendant, having been made or depending for their efficacy upon a power of attorney made by Kasey previous to the issuing of the patent to him, were invalid (Acts of Congress, May 6, 1812, § 4, and April 16, 1816, § 5), and were therefore improperly received in evidence.

*Graham & Davis*, for defendant in error, argued that the powers of attorney were properly received in evidence; that they had been executed in Maine, and according to the laws of that state (R. S. Maine, 373; R. S., ch. 98, § 96); that the court at the trial might proceed upon its knowledge of the laws of a sister state, and in that case proof of such laws was unnecessary, and that the judgment rendered would not be reversed unless it appeared that the court decided wrong as to such laws (*State v. Rood*, 12 Vt., 396; 1 Greenl. Ev., 645; Story's Confl. of Laws, §§ 640, 641); that the sale under the power from Kasey to Bradbury was not made until after the patent was issued, and a *bona fide* purchaser under such power could not be disturbed; that a revocation of such power could take

Nichols vs. Nichols.

effect as to the agent, only on notice to him of such revocation, and as to third persons not until made known to them.   Story on Agency, 611 ; 2 Kent Com., 611.

JACKSON, J.   The decision of this case involves an inquiry into the act of congress of 1812, together with the several acts of congress, passed subsequently, relating to the military bounty lands, appropriated for services in the war between the United States and Great Britain.

The second section of the act of congress, passed May 6, 1812, providing for issuing warrants for the military land bounties to the persons entitled thereto, contains the proviso : "Provided always, that such warrants shall be issued only in the names of the persons thus entitled, and be by them, or their representatives, applied for within five years after the said persons shall have become entitled thereto ; and the said warrants shall not be assignable or transferable in any manner whatever."   And in the 4th section of the same act it is further declared, "that no claim for the military bounties aforesaid shall be assignable or transferable in any manner whatever, until after a patent shall have been granted in the manner aforesaid.   All sales, mortgages, contracts, or agreements of any nature whatever, made prior thereto, for the purpose, or with the intent of alienating, pledging or mortgaging any such claim, are hereby declared and shall be held null and void."

Since the passage of this act, congress has passed several other acts, making further provisions for military services during the late war, and for extending the time for issuing and locating military land warrants.   Among these, the most important are the acts of *April* 16, 1816; *February* 24. 1819 ; *May* 26, 1824 ; *January* 27, 1835 ; *May* 27, 1840 ; *and July* 27, 1842.   The act of 1842 continued in force for the period of five years ; the act of 1835 was but a renewal of the acts of 1819 and 1824.

The act of May 6, 1812, having been revived and continued by subsequent acts, all sales and transfers of the military bounty lands, appropriated for services in the war of 1812, made prior to the entry and the issuing of the patent, are invalid. The act of 1842, under which the warrant was issued to Richard H. Kasey, and the location made in his name of the tract to which the title is in controversy in this cause, contains this express provision: " That the certificate of location obtained under the provisions of this act *shall not be assignable*, but the patent shall, in all cases, issue in the name of the person originally entitled to the bounty land, or to his heirs or legal representatives." In pursuance of this act, as well as of the provisions of the previous acts of congress, which are continued and revived, the patent of the United States for this land, was issued to Kasey on the 14th day of ·February, 1849. And on the 20th day of June, 1849, Kasey and his wife conveyed the land described in the patent, to *Walter H. Nichols*, the plaintiff in error, and the deed of conveyance was recorded in the register's office of Fond du Lac county, on the 10th day of October, 1849.

. On the trial of the cause, which was an action of trespass, instituted by *Walter H. Nichols* against *John Nichols*, for trespasses upon this land, the plaintiff, to show title in himself, produced and offered in evidence the patent and the deed above mentioned ; and having introduced testimony proving the trespasses, and the damage occasioned by them, rested his cause. The counsel for the defendant then produced the records of the register's office of Fond du Lac county, and offered in evidence, 1. The record of a power of attorney from Richard H. Kasey to John Bradbury, containing a power of substitution, executed the 11th day of August, 1843, recorded the 6th of October, 1849, and which purported to authorize and empower the said John Bradbury, for his own sole use and benefit, to locate warrant 27,252, issued to said Kasey, and to sell the lands located, and to receive payment for the same.

2. The record of a power of attorney from John Bradbury to Edward D. Holton, recorded the 6th day of October, 1849, purporting to have been executed in the state of Maine, witnessed by only one witness, dated the 1st day of April, 1845, and by its terms, after reciting the power of attorney from Richard H. Kasey to John Bradbury, authorizing and empowering the said Holton, for his sole use and benefit, to locate said warrant number 27,252, and to sell the lands located, and to receive payment for the same.

3. The record of three deeds, all recorded the 6th day of October, 1849; the first from Richard- H. Kasey by Edward D. Holton, his attorney, to David McDougal, dated August 8, 1849, purporting to convey to said McDougal the land described in said patent from the United States to said Kasey, to-wit: The southwest quarter of section thirty-three, township sixteen north, of range seventeen east.   The second from David McDougal and Minerva McDougal to Joseph E. Garland, dated August 22, 1849, purporting to convey to said Garland the south half of said southwest quarter of section thirty-three; and the third deed from Joseph E. Garland to *John Nichols*, the defendant in error, dated October 6, 1849, purporting to convey to said *Nichols* the said south half of the southwest quarter of section thirty-three.

To all of which evidence the counsel for the plaintiff objected, and his objection having been overruled by the court, the cause comes to this court on exceptions to the decision of the judge admitting this evidence.   Its admissibility must be determined by the provisions of the acts of congress before referred to, and under which the tract of land in question was located and patented.   As the authority to execute the deeds last described, and to convey the lands therein mentioned was derived through the power of attorney from Richard H. Kasey to John Bradbury, the first and material inquiry is as to its validity.   If it was void, then Holton, as the attorney of Kasey could convey no title to McDougal; McDougal could convey

none to Garland, nor Garland to *John Nichols*. Now, the power of attorney from Kasey to Bradbury was executed on the 11th day of August, 1843 ; and the patent to Kasey for the same lands was not issued until the 14th day of February, 1846. The evident design as well as effect of this instrument was to transfer from Kasey, the patentee, before the issuing of the patent, and in violation of the act of congress, all his right, title and interest in the warrant, and all the title which he would acquire by the location of the warrant and the issuing of the patent, in the land in controversy. This consequence was as clear and as absolute as if Kasey had assigned directly all his interests in the warrant, a proceeding which was in terms prohibited by the acts under which the warrant was issued.

There can be no question, therefore, that the conveyance by Holton to McDougal was an evasion of the law of congress, and that no right or title to the land in question by virtue of his power of attorney could be lawfully acquired.

The deeds were improperly received in evidence, and the judgment below must be reversed.

Judgment reversed.