## WILSON vs. HENRY and others.

TAX DEED: ADVERSE POSSESSION: EVIDENCE. (1) *Former rules approved and explained.* (2) *Person whose title is sought to be cut off by tax deed regarded as true owner.* (8) *Evidence of adverse constructive possession under tax deed strictly construed.* (4) *Actual occupancy by former owner bars claimant under tax deed.* (5) *Evidence of adverse possession by original owner.*

1. The rules that "evidence of adverse possession is always to be strictly construed, and every presumption made in favor of the true owner," and that "the party whose title is to be destroyed or remedy barred may properly stand on the letter of the statute, and insist upon a strict compliance with its provisions" (*Sydnor v. Palmer*, 29 Wis., 226, 251-3), approved and explained.

2. In a contest between a tax title claimant and the person whose title is sought to be cut off, or remedy barred, by virtue of adverse possession under the tax deed and of the statute of limitations, the rules above stated apply in favor of the latter as the "true owner;" and this notwithstanding any technical defects found in some of the conveyances which form his chain of title.

3. In such a case the evidence of adverse constructive possession under the tax deed must be strictly construed, and the party defending against such tax deed may avoid the bar of the statute by showing any actual occupation and use of the premises under his title, for *any portion* of the three years limited by the statute. *Lewis v. Disher*, 32 Wis., 504.

4. Such actual occupancy by the former owner during any considerable portion of the period mentioned, *bars the claimant under the tax deed* who does not bring his action within that period.

5. In an action brought by one claiming under a tax deed recorded in 1858, to bar the title of the original owner, defendant offered to show that from 1858 to the commencement of the action, during the mining season of each year, from two to ten miners had constantly worked and mined for lead ore upon said land, they being usually farmers, working their farms during the summer, and mining during the winter, and working the land under verbal leases from defendants or their agent, to whom they paid rent; also "that a custom exists where this land is situate, making it obligatory upon the land owner to hold mineral diggings for the miner operating them, during the summer season, though the miner does not work during such summer season;" also that said mining "was mostly near the surface and in open cuts, so as to be plainly visible to all," etc. *Held*, that it was error to reject this evidence, as the facts stated would have shown the action to be barred by the statute.

APPEAL from the Circuit Court for *Iowa* County.

Action for an alleged trespass committed by defendants October 21, 1871, upon land of which plaintiff claimed right of possession, with actual possession and title in fee simple The answer of the defendant *Henry* denied plaintiff's title, and charged that one Stephenson was the owner in fee simple and entitled to the possession; that Stephenson had been the owner and in actual possession of the land since 1857, and the parties from whom he derived title had been the owners and in possession since 1847; that *Henry* had acted as agent for Stephenson for many years in collecting rents from and paying taxes on the land, and as such agent had been in actual possession since 1856; that the tax deed under which plaintiff claimed title to the land was dated February 3, 1868, and exe-

cuted to one Moffett, but that Moffett never obtained or attempted to obtain possession of the land under the deed, and that more than three years had expired from the date of the tax deed before the action was commenced : wherefore defendant claimed the benefit of the statute of limitations against such tax deed.    Plaintiff replied, alleging that the tax deed to Moffett was duly recorded February 3d, 1868, and that Moffett, on the 15th of April, 1868, conveyed to plaintiff; that at the date of recording the tax deed the lands were unoccupied and unimproved ; that neither Stephenson nor *Henry* had been in the actual, continued adverse possession of the premises for three years next succeeding the date of the tax deed ; and that they had not paid the taxes for each of the three years since said date, and had not held the premises adversely to plaintiff.

Upon the trial, plaintiff put in evidence the tax deed to Moffett, and Moffett's deed to himself, and testified that prior to October, 1871, the land in question had never been inclosed, nor had it been actually occupied or worked in any manner, except that considerable mining had been done upon it ; and that in 1870 he gave written leases to one Holmes and one Hildreth, " giving them permission to dig on the land," and in the winter of 1871-2, one West paid him rent for the use of the land in mining.    Defendant put in evidence a patent of the land from the United States to one Tuttle, and certain mesne conveyances terminating in a deed to one Collier, together with the will of Collier, and a deed of the land from his executors to Stephenson in 1857.    For certain irregularities these instruments were ruled out as direct evidence of the transmission of the title from Tuttle to Stephenson, but were allowed to be read in connection with any evidence of possession by Stephenson under claim of title founded upon such instruments, to establish his title by adverse possession.    The defendants admitted that the land had never been fenced or cultivated ; but they offered to prove that *Henry* had been the agent of Stephenson since 1858, to look after the land, and that as such

agent he was empowered by Stephenson to enter upon the land; that in 1858 he went upon and surveyed it, and since that time had gone upon it at least four times a year until the present time; and that for two or three years after 1858 he sold the grass growing along a stream running through one end of the land. They also offered to show constant possession of the land since 1858 by miners during the mining season of each year, under verbal leases from *Henry*, as Stephenson's agent. Their offer is set forth more fully in the opinion.

The evidence so offered was excluded as irrelevant and incompetent. Verdict and judgment for plaintiff; and defendants appealed.

*Henry & Smith*, and *P. A. Orton*, for appellants, argued, *inter alia*, that whatever view might be taken of the rejected evidence offered by defendants, so far as establishing title in Stephenson by adverse possession is concerned, the court clearly erred in rejecting this evidence when offered as tending to show that the statute of limitations has run against plaintiff's tax deed. More than three years had elapsed after recording the tax deed before bringing this action. Plaintiff does not claim to have been in the actual possession of the land during any part of the three years immediately after recording the tax deed. He is clearly barred from bringing this action, by the statute of limitations, unless the lands have been continuously and wholly unoccupied for this three year period. *Lewis v. Disher*, 32 Wis., 504; Laws of 1859, ch. 22, sec. 32. It is said that defendants cannot use the statute against the plaintiff because they have not shown legal title to the land in Stephenson. Sec. 32, ch. 22, Laws of 1859, is in terms operative between the grantees in a tax deed and the whole world, whether former owners of the title to the land or strangers to it. But whether this be so or not, it is clear that one who had been for years exercising acts of ownership over the land, claiming title to it in good faith, is entitled to the benefit of the statutory bar.

*Alexander Wilson*, respondent, in person, contended that as

to adverse possession under sections 6 and 7, ch. 138, R. S., this court has held it to be matter of grave doubt whether the continued occupation of mineral ground for mining purposes is such possession as is contemplated by the latter section. See *Sydnor v. Palmer*, 29 Wis., 226; *Deery v. McClintock*, 31 id., 195. If it is matter of grave doubt, in the opinion of this court, whether the continued occupation of land for the purpose of mining is within the statute relating to adverse possession, then it is perfectly clear that the possession of land for a few months in the year for the avowed object only of digging for mineral thereon is not adverse possession at all. The statute clearly relates to the cultivation of the soil, and not to works beneath it and having no connection with its improvement.

DIXON, C. J. The court sees no reason to doubt, qualify or disturb the rules laid down in *Sydnor v. Palmer*, 29 Wis., 226, 251-3, for the construction of statutes of limitation, nor to question the correctness of the construction which was given to the statute there under consideration. To determine precisely what was there decided, and the application and effect of the decision in a case like the present, it is necessary that the language of the opinion should be carefully read and observed. The language is: "Evidence of adverse possession is always to be strictly construed, and every presumption is to be made in favor of the true owner." Again it is said: "The party whose title is to be destroyed or remedy barred, may properly stand on the letter of the statute, and insist upon a strict compliance with its conditions."

It should also be borne in mind that the party seeking to take advantage of the statute in that case, and against whom the rules of strict construction were held, was the claimant under the tax deeds. In the application of the rules, the owner of the land at the time the taxes were assessed, and whose title was to be destroyed or remedy barred by operation of the

statute and of the alleged adverse possession, was regarded as *the true owner* ; and it was *in his favor* and *in support of his title* that the strict construction was given. The construction favored the title of the original owner, who was looked upon as the true owner, and disfavored that of the claimant under the tax deeds.

In the present case the defendant *Henry*, or the party whom he represents, Mr. Stephenson, must be regarded as the true owner, notwithstanding any technical defects or objections which have been found or raised to his title, or to some of the conveyances or transfers which go to form his chain of title. As it respects the plaintiff, whose sole connection with the title or interest in the land is by virtue of the tax deed, and who does not stand before the court to challenge the title of the defendant or to exhibit or take advantage of its defects except as he can show and assert title in himself under the tax deed, the defendant *Henry*, as the representative of Stephenson, is to be deemed the true owner. Certainly all the equities, if not the strict law, are with the defendant as such owner for the purpose of applying the rules, as much so as if he had shown an absolutely unblemished legal title at the time the taxes in question were assessed. It is his original, true and otherwise unquestioned title which is sought to be cut off by virtue of the statute of limitation and of the adverse possession claimed under it and under the tax deed.

How then stands this case with reference to the doctrine of *Sydnor v. Palmer* ? The plaintiff seeks to cut off the remedy and destroy the right of the true owner, and to show an indefeasible title in himself by virtue of an adverse constructive possession of the land for three years next after the recording of his tax deed. Within the rule, the evidence of such adverse constructive possession must be strictly construed and the defendant may avoid the bar and defeat the right asserted by the plaintiff on this ground by showing *any actua* occupation and use of the premises under his title for *any por*

*tion* of the three years so required to perfect the title of the plaintiff or to debar the remedy of the defendant. This principle has already been settled by this court in the case of *Lewis v. Disher*, 32 Wis., 504, and it is needless to add to the discussion which will there be found. The court there say: "In order that the claimant by tax deed may assert or acquire title to unoccupied land in that way, or by lapse of time under the statute, it must appear that the land remained and was continuously unoccupied for the whole period during which the statute was running. *Any intervention and actual occupancy during the time by the former owner, or any person for him,* disengages the bar of the statute and relieves the former owner from the conclusive effect which would otherwise be given to the tax deed."

But, as will be seen from the same decision and others by this court with which counsel are familiar, the effect of an actual possession taken and held by the former owner during the whole or any considerable portion of the three years, is not only to disengage the bar of the statute when resorted to in favor of the grantee by tax deed, but also to create a bar against him and in favor of the title of such former owner. It operates in favor of the true or former owner thus entering and holding, to cut off the remedy of the grantee by tax deed, and to annul his title whatever it may have been.

In view of these well settled principles, this court is of opinion that it was error for the court below to reject the offer of proofs made by the defendants on the trial, and especially that part of the offer in which the defendants proposed to show "that from 1858 to the commencement of this action, during the mining season of each year, from two to ten miners have constantly worked and mined for lead ore upon said land, such miners being usually farmers, working their farms during the summer season, and mining during the winter season, such miners so working upon said land under verbal lease from *Henry*, acting as Stephenson's agent, they paying rent to *Hen-*

*ry*; also that a custom exists where this land is situate, making it obligatory upon the land owner to hold mineral diggings for the miner operating them during the summer season, though the miner does not work during such summer season upon such diggings; also that the mining for said period upon this land was mostly near the surface of the ground and in open cuts, so as to be plainly visible to all; also that occasionally a miner worked upon said land under Stephenson during said time in the summer seasons; also that Stephenson has paid all the taxes assessed upon said land since it was deeded to him by Collier's executors, except the taxes for the nonpayment of which the land was sold and the tax deed to the plaintiff was made; also that Charles West, Thomas Holmes and Levi Hildreth were tenants of Stephenson, mining upon said land at the time they became tenants of the plaintiff, as testified by the plaintiff, and that they wrongfully attorned to the plaintiff."

The time included in the foregoing offer embraced the whole period of the three years from and after the recording of the plaintiff's tax deed; and the facts, if established, would divest the plaintiff of all constructive possession during the same period. They would not only disprove and destroy his constructive possession, but they would turn the statute of limitation against him by showing the actual possession and occupancy of the former owner, thus cutting off any title acquired under the tax deed unless the plaintiff saw fit to bring his action to recover the possession within the three years. The offer, if proved as made, would have shown that the plaintiff was thus under the necessity of bringing his action, and that, not having done so, he had lost his title, if any, acquired by the tax deed, and could not maintain this action, which was not instituted until after the expiration of the three years. It would have sustained the plea or answer of the statute of limitations made by the defendants, so as to protect them and the title under which they claim against the present action and the right now set up by the plaintiff.

The other objections and exceptions contained in the record, and which are quite numerous, have not been considered by the court, and will not now be spoken of. They have been omitted partly for want of time, and partly because the offer, if established on a subsequent trial, may render it unnecessary ever to consider them.

*By the Court.*—Judgment reversed, and a *venire de novo* awarded.