## STEPHENSON VS. WILSON and another.

TRESPASS.    (1) Quare clausum.    *Plaintiff proving title must show valid title.*

DEED OF BOUNTY LAND.    (3) *Void, when executed prior to issue of patent under act of congress.*

ADVERSE POSSESSION.    *Of mining lands for mining use, good against tax title.*

1. In trespass *quare clausum*, if plaintiff cannot show actual and exclusive possession of the land, but is obliged to rely upon his legal title, he must show a *valid* title.

2. In such action, when defendant claims title to the land under a tax deed, although it appears that if plaintiff were holder of the original government title, defendant's right of action against him on the tax deed would be barred by reason of plaintiff's occupancy of the land for a part of the three years next after the recording of such deed, still, as to the acts performed by him under a claim of title and right of possession by virtue of his tax deed, defendant cannot be treated as a mere wrongdoer or intruder; but he may question the sufficiency of plaintiff's title, and require him to make strict proof of it. *Wilson v. Henry*, 35 Wis., 241, so far as it seems to imply a different view, overruled.

3. Where land was located under a military land warrant issued under the act of congress of May 6, 1812, a deed of it executed prior to the issue of the patent is *held* invalid. *Nichols v. Nichols*, 3 Chand., 189, followed; and *Maxwell v. Moore*, 22 How. (U. S.), 185, distinguished.

4. If, during a part of the three years next after the recording of a tax deed, the former owner of the land, by himself, his agents or tenants, openly occupy it *for mining purposes*, the acts of mining not being merely occasional, fugitive and desultory, but as continuous as the nature of the business and customs of the country permit or require, this will be such an *adverse possession* as will interrupt the running of the statute of limitation in favor of the tax title claimant. *Wilson v. Henry* (35 Wis., 241), as to this point, approved; and a remark in *Sydnor v. Palmer* (29 Wis., 228), qualified.

APPEAL from the Circuit Court for *Iowa* County.

Action for trespass *quare clausum*.    The complaint avers the plaintiff's ownership in fee of a quarter section of mineral land in Iowa county, and that he, his grantors and those under whom he claims, had been in possession since July, 1847, and

in the usual form alleges a trespass *quare clausum* thereon by the defendants, Oct. 23, 1871, their threats to continue such trespass and to dispossess the plaintiff, and to collect rents from the miners at work thereon, and demands judgment for damages, injunction, etc. The answer of defendant *Wilson* sets up title under a tax deed issued Feb. 3, 1868, to one Moffett, upon the tax sale of 1858, and recorded the day of its issue; that the lands were then vacant and unoccupied, and so continued until about Jan. 1, 1870; that Moffet conveyed to *Wilson*, April 15, 1868; that *Stephenson*, the plaintiff, commenced an action Jan. 12, 1870, to recover possession of said premises against defendant *Wilson*; that, in his complaint therein, *Stephenson* alleged that *Wilson* was in, and unlawfully withheld, possession from him; that he, *Wilson*, answered said complaint denying the same, except the allegation that he was in possession, which he admitted; that he relied upon the admission of his possession by the allegation in said complaint, and did not bring suit against the plaintiff, and was ready to try the issue in said action; that *Stephenson* after 3 years and 8 months from the issue and recording of said tax deed withdrew his suit; that defendant was the exclusive owner, and had been in the actual and peaceable possession of the premises since January, 1870, and at the time of the alleged trespass, was engaged in making improvements thereon; and that Oct. 21, 1871, several men, at the instance of the plaintiff *Stephenson*, broke and entered the premises and erected a shanty thereon, to his damage, etc. The plaintiff replied, alleging that his grantors and himself had been in the actual, peaceable, open, continuous possession of the premises since the year 1834, mining, cutting feed and hay thereon, denying that the claimants under said tax deed had ever obtained possession, or attempted to do so until Oct. 23, 1871, when, first having obtained an injunction restraining the plaintiff from interference, they entered *vi et armis* and drove plaintiff's agents therefrom, but never obtained possession; and that defendants are barred by the statute of limitations.

On the trial the plaintiff, to establish his title, offered in evidence a certified copy of a patent of the premises in question, issued by the United States to one Tuttle, Sept. 3, 1847, under the act of congress of May 6, 1812; and the record of a power of attorney given by said Tuttle to Lyons & Henn to apply for and take out said patent and convey the lands, which power was executed at Washington, D. C., June 24, 1846, and purported to have been acknowledged that day before two justices of the peace, whose official character was certified by the secretary of state of the United States, but the signatures of the justices were without seals, and the certificate did not state that the justices knew said Tuttle, or that his identity was proven, for which reason the defendant objected to said power of attorney being received, and the objection was overruled. The record of a deed from said Tuttle, by Henn, one of his attorneys in fact, to Paschal Bequette, dated Sept. 1, 1847, acknowledged Sept. 2, 1847, and recorded Sept. 20, 1847, was also offered in evidence. The defendants objected on the ground that the deed had been executed prior to the issuance of the patent, and was therefore void. The objection was overruled, the deed read, and the record of a deed from Bequette to one Collier, and a copy of the probate of Collier's will, and a deed from the trustees, therein appointed and empowered, to *Stephenson*, were also read; and the plaintiff also offered in evidence the tax receipts showing that he, and those under whom he claims, had paid taxes on the land since 1853, except for the year 1857. John Vingo, a witness for the plaintiff, testified that he was put in possession of the land by Henry, agent of the plaintiff, and was empowered to collect dues or rent from the miners who were mining on the land; that he collected rent from them in 1867, 1869 and 1871; that a number of miners worked thereon at various times and paid him rent; that he let one person cut hay on the land; that any one could dig on the land by paying the rent, and that it was a custom for miners to leave work in summer and come back in winter;

that most of the diggings were from six to twenty feet deep. The depositions of A. C. Dodge, Adele Dodge and Paschal Bequette were read to the effect, that they had seen the original power of attorney, above mentioned, and that it had been lost.

A motion for nonsuit was denied. The defendant offered in evidence the tax deed to Moffett, and Moffett's deed to *Wilson* ; also the record of the suit mentioned in his answer, in which the complaint, dated Jan. 10, 1870, alleged that the defendant (*Wilson*) unlawfully (then) withheld possession of said premises from the plaintiff. The plaintiff then offered as a witness one Poynette, who testified that he had mined on the land under Bequette, and afterwards under permission from Henry and Vail, agents of *Stephenson* in 1868 and 1871 ; that he had also worked some on the land for Wilson ; that he had paid rent to Vail, Henry and Vingo. Other evidence was offered of the same purport. Henry, agent of the plaintiff, testified that he had been agent since 1858 ; had collected rent of miners in 1869, 1870 and 1871. The defendant *Wilson* also testified that he had leased the land to miners and received rent therefor in 1870 and 1871.

The instructions are sufficiently stated in the opinion. Verdict for plaintiff. Motion for new trial denied, and defendant appealed.

*A. Wilson, M. M. Cothren* and *W. E. Carter*, for appellant, argued that until plaintiff established a *prima facie* title it was unnecessary for defendants to show any title. *Brown v. Peckham*, 18 Pick., 172 ; 1 Hill. on Torts, 601, and note. The use and occupation for mining does not constitute adverse possession under the statute. *Sydnor v. Palmer*, 29 Wis., 227 ; *Wilson v. Henry*, 35 id., 241 ; *Dupont v. Davis*, id., 631 ; *Doolittle v. Tice*, 41 Barb., 181. The deed from Tuttle to Bequette was void. U. S. Stat. at Large, vol. 2, 729 ; 3 id., 287 ; 5 id., 497. Evidence of adverse possession is to be strictly construed, and every presumption made in favor of the true owner. *Timm v. Bear*, 29

Wis., 262; *Haag v. Delorme,* 30 id., 591; *Lewis v. Disher,* 32 id., 507.

*Henry & Smith,* for the respondent, contended that the tax deed under which defendant claimed was void; that the doctrine of *Sydnor v. Palmer* did not here apply; that that case placed too strict a construction on the statute; that the words " ordinary use of the occupant " in the statute, R. S., 1858, ch. 138, sec. 7, subd. 3, may, with great reason, be deemed mining use, as mining lands are thus ordinarily used, and are rarely susceptible of other use. From the testimony, they argued that the constructive possession of *Wilson* under his tax deed was entirely defeated by the possession of *Stephenson* as proved.

COLE, J. We shall not attempt to consider all the exceptions presented by the record and discussed by counsel, but will mainly confine our attention to questions arising upon some portions of the charge of the court which were excepted to and are claimed to be erroneous.

The circuit court, among other things, charged the jury that the plaintiff must be regarded as the true owner — in other words, as being invested with the original government title — notwithstanding any technical defects or objections which had been found or raised to his title, or to some of the conveyances or transfers which constituted his chain of title; that the defendant's sole connection with the title, or his interest in the land on which the trespass was committed, was founded upon the tax deed offered in evidence, under which he claimed; and that he did not challenge the title of the plaintiff except as he attempted to show title in himself under that deed; and that the plaintiff must be regarded as the owner of the original title, at least till the tax deed was executed and recorded.

In giving this charge the learned circuit judge doubtless intended to adopt, and seems to have adopted and followed, the views and language of this court as contained in the opinion in the case of *Wilson v. Henry et al.,* 35 Wis., 241, and he must

Stephenson vs. Wilson and another.

therefore be absolved from all responsibility for any error which it may contain. That it is erroneous, when considered with reference to this action and the claims of the parties, we cannot doubt. The action is for trespass *quare clausum*. Both parties claim title to the land, and both parties claim to have had actual possession when the alleged trespass was committed. And, though the gravamen of the complaint is for an injury to the plaintiff's possession, yet it is entirely clear that by the pleadings the right or title to the property was put in issue, and was the real important question contested on the trial. In order to support the action, the plaintiff deemed it necessary for him to show that he was the rightful owner of the land, and that his possession had been wrongfully invaded by the defendant. He relied on a paper title derived from the general government through various mesne conveyances, and entry and possession under his deed. The land was not inclosed, and there is a dispute as to who had the actual occupation and possession. The plaintiff did not choose to rest his right to recover upon the ground that he was in the actual, visible and exclusive possession, but saw fit to raise the question of title, and attempted to show that he was the real owner. Hence, he offered in evidence the various conveyances constituting his chain of title. The defendant sought on the trial, and to some extent was allowed, to challenge the sufficiency and validity of these conveyances; and we are clearly of the opinion that he was in a position to take advantage of any defects in them. It is true the defendant claimed title and possession under a tax deed. He claimed to be the true owner: to have the superior title, the possession, and the right of possession. It seems to us it is incorrect to say he stands in the position of a wrong-doer, or a mere intruder, having no right to assail or question the title of the plaintiff. He may question the sufficiency of that title; may show, if he can, by competent evidence or valid legal objections, that there are defects in those conveyances; that the plaintiff is not the true owner, and never became invested with

the original government title. Nor do we see any ground for making presumptions in favor of the plaintiff's title. He must show that he has the legal title, and also must prove an injury to his possession by the defendant, in order to recover. It is evident the cause was tried upon the theory that it was essential for the plaintiff to establish these facts as a part of his case, and the court so told the jury, and then neutralized and destroyed the effect of this direction by giving the incorrect charge already referred to. The plaintiff must prove a right of property and lawful possession in himself, which the defendant has disturbed. Did he do so?

The land in question was located by one Abraham Tuttle, in pursuance of a land warrant issued to him for military services. The warrant was issued to Tuttle in pursuance of the act of congress of May 6, 1812, and was located under the act approved July 27, 1842. (See 2 U. S. Statutes, p. 728; 5 id., p. 497.) The land was conveyed (under a power of attorney given by Tuttle to Wm. C. Lyons and Bernhardt Henn), to Paschal Bequette, the deed bearing date September 1, 1847, before the patent issued. The admission in evidence of the record of the power of attorney was objected to on the ground that the instrument was not entitled to be recorded, the acknowledgment being insufficient; but the court overruled the objection, and admitted the record for the purpose of establishing a proper basis of proof of title in the plaintiff. An attempt was likewise made to prove the loss of the original power of attorney and its contents by parol testimony, which evidence was objected to. But all the exceptions arising on this part of the record we decline to consider or express any opinion upon, and come directly to the question in respect to the deed. It is claimed by the defendant, inasmuch as this conveyance was executed prior to the issuing of the patent, that by the acts of congress it is void, and passed no title. If this view is correct, it must work a reversal of the judgment. For we have already said that if the plaintiff recovers at all in the

action, he must do so on the strength of his own title, and that the defendant was in a position where he could challenge or take advantage of any defect in that title.   Was, then, the deed executed by the attorney in fact of Tuttle to Bequette, in violation of the acts of congress touching the sale of bounty lands, void because it was made before the patent issued ?

This precise question was presented to the court in the case of *Nichols v. Nichols*, 3 Chand., 189, and received an affirmative answer.  It was there held that, by the act of May 6, 1812, and the several acts subsequently passed relating to military bounty lands, the beneficiary was prohibited from assigning or transferring any claim thereto until after the patent for the land issued. It is obvious that this case is decisive upon the question as to the invalidity of the deed, unless we decline to follow the construction there placed upon the acts of congress.  It is, however, insisted by the counsel for the plaintiff, that the authority of the case should be disregarded, because the reasoning by which the court reached its conclusions is not clear and satisfactory, and because the doctrine of the case has been virtually overruled in *Dillingham v. Fisher*, 5 Wis., 475, and *Maxwell v. Moore*, 22 How. (U. S.), 185.  In *Dillingham v. Fisher*, the question before the court was, whether a preemptor who had paid his money and obtained the register's certificate of purchase, could sell and convey his interest in the land before the patent issued to him, or whether the preemption laws prohibited such a sale.  It was held that the prohibition only prevented a sale of " the right of preemption " given by the act, and did not forbid or restrict the preemptor from assigning and transferring his interest in the land after he had paid for it.  The case is only valuable, as touching the one before us, in showing that courts will not by construction enlarge a restriction upon the right to free alienation of property; and that the prohibition must clearly apply.  That is doubtless a sound rule, but it is not necessarily in conflict with the decision in *Nichols v. Nichols.*

In *Maxwell v. Moore*, the question was, whether the prohibition in the act of 1812 was engrafted upon and became a part of the act of May 22, 1826 (4 U. S. Statutes, p. 190), which allowed a soldier, who had a patent for bounty lands in the territory of Arkansas which turned out to be unfit for cultivation, and who had removed for actual settlement on the land, to relinquish such land and surrender his patent and select a like quantity elsewhere in the land district. Neither the act of 1826, nor any of the subsequent acts extending it, contained any restriction whatever against alienation. The court held that the acts of 1812 and 1826 had no necessary connection, and that there was no good reason why the soldier who had removed to Arkansas and inspected his tract of land, then patented and alienable, should not have the right to contract to convey the tract he might get in exchange. The act of 1826 was said to be plain on its face and single in its purpose, and the court refused to imply a restriction where congress had made none. It is obvious that this case and that of Nichols may well stand together.

As an original question, it is by no means clear that the construction placed upon the acts of congress in *Nichols v. Nichols* is not the correct one. It must be conceded that a limitation exists in the act of 1842 against the alienation of the certificate of location by the beneficiary. But it is said that this was not intended to restrict the right of the beneficiary to make an executory contract for the sale of the land which he had located. If the only object of this prohibition was to prevent a sale and transfer of the certificate of location, leaving the holder at liberty to dispose of his interest in the land at pleasure, there would not seem to be much need for or use in the provision. For, if the soldier can by contract, executed or executory, dispose of all his equitable interests in the land before the patent issues, the restriction is of doubtful utility. But the object of the restriction doubtless was to protect the soldier, and to prevent him from selling his interest and title in the land before the

patent issued. Whether wise or unwise, there are strong grounds for holding that this was the original purpose and design of the prohibition. However this may be, since the question was decided in *Nichols v. Nichols*, that the soldier is prohibited from assigning or transferring his interest in the land before the patent issues, we are disposed, without further remark, to adopt and follow the construction then placed upon the acts of congress upon this subject. Should the supreme court of the United States give a different interpretation to these statutes, we should then feel at liberty to review the correctness of that decision. It follows from these views that the plaintiff's title was defective, and that the deed from Tuttle to Bequette, having been made and acknowledged prior to the issuing of the patent, did not transfer to the grantee any title. And, as no presumption can arise that the plaintiff was invested with the original government title, except as he derived it through that deed, the injurious tendency of the charge above referred to upon the defendant's case becomes apparent.

Upon this branch of the case we take occasion to remark that we have examined the case of *Lessee of French et al. v. Spencer et al.*, 21 How. (U. S.), 228, but find nothing in it which militates against the conclusion at which we have arrived.

The counsel for the plaintiff, moreover, insist that this deed, together with other documentary evidence offered, was competent, as furnishing a basis of adverse possession for ten years, and also for applying the three years limitation against the tax deed. Upon this branch of the case, the court, in substance, instructed, that, notwithstanding the plaintiff was to be regarded as the owner of the title derived from the government, yet that the tax deed divested him of that title from the time it was recorded, unless the plaintiff could show that he or his agents had been in possession of the land the whole or some part of the time, within three years next after the date and record of the tax deed. Further, that if the jury should find from the evidence that the land had been wholly unoccupied by the

plaintiff or his agents or tenants, for the entire term of three years next after the recording of the tax deed, he could not recover, but might recover providing it appeared that for any part of the three years he had been in possession. Also, that, if the plaintiff, by himself, or his agents, or tenants, openly occupied the land and mined thereon for the purpose of obtaining lead ore, for any part of the three years, this would bar the title under that deed; and that if the land was open for mining to all miners who might choose to occupy it for that purpose, paying the customary dues, the occupancy of such miners should be regarded as the occupancy and mining of the plaintiff; but if the land was vacant and unoccupied by any person under the authority, permission or consent of the plaintiff or his agent, then their verdict should be for the defendant.

The first clause of this charge is open to the criticism passed upon it by the defendant, namely, that it assumes a material fact as proven; in other words, that the plaintiff was to be regarded as the owner of the original government title. But aside from this it seems to be substantially correct. It is claimed by the defendant that no possessory acts by the owner of the character referred to in the instruction will break the continuity of that possession which arises on the record of the tax deed. Hence he insists that the use and occupation of land merely for mining purposes or other operations carried on beneath the surface not connected with the ordinary use and cultivation of the soil, is not such a use and occupation as constitutes adverse possession against his title, providing it is shown that he has been possessed of the land for any time within the three years after the record of the deed. That mining operations upon land, or its possession for the purposes of mining, would constitute an effective adverse possession as against the tax deed, was decided in *Wilson v. Henry*; indeed, that was the real question which was involved in the case. The defendants there, among other things, proposed to show that from 1858 to the commencement of the action, during the

mining season of each year, from two to ten miners had con-
stantly worked and mined for lead ore upon the land, such min-
ers being usually farmers working their farms during the sum-
mer season and mining during the winter season; such miners
so working upon the land under verbal leases from Henry,
acting as this plaintiff's agent, they paying rent to Henry; also
that a custom exists where this land is situated, making it obli-
gatory upon the land owner to hold mineral diggings for the
miner operating them during the summer season, though the
miner did not work during such summer season upon such dig-
gings; also that the mining for said period upon the land was
mostly near the surface of the ground, and in open cuts, so as to
be plainly visible to all; also that occasionally a miner worked
upon the land under this plaintiff during said time in the sum-
mer season; also that certain named persons were tenants of
this plaintiff, mining upon the land at the time they became
tenants of this defendant, etc.   This proposed testimony was
ruled out, and its exclusion was held to be error.   It was said
that the facts, if established, would divest the holder under the
tax deed of all constructive possession, and effectually turn the
three years limitation against him, by showing possession and
actual occupancy on the part of the former owner.   And in-
deed it is difficult upon principle to see any reason why this
should not be so.   For surely the carrying on of mining opera-
tions upon lands, the digging and carrying away of ores and
minerals taken therefrom, are as unequivocal acts of ownership
and possession as the cultivation of the soil or raising of crops
thereon, and there is no reason why they should not be held to
be an interruption of the constructive possession which follows
the recording of the tax deed.   This court has said that in or-
der that the claimant by tax deed may assert or acquire title
to unoccupied land by lapse of time under the statute, it must
appear that the land remained and was unoccupied contin-
uously for the whole period during which the statute was run-
ning; and that any intervention or actual occupancy during

the time by the former owner, or of any person for him, disengages the bar of the statute and relieves the former owner from the conclusive effect which would otherwise be given to the tax deed. *Lewis v. Disher*, 32 Wis., 504 ; *Wilson v. Henry*, *supra*. And there is no reason why the use and occupation of land for mining purposes and for carrying on mining operations beneath the surface should not be effectual to destroy the constructive possession under the tax deed. It may be difficult to lay down any precise rule as to the extent to which such mining operations should be carried on to have that effect ; but should the facts be established which it was proposed to show in *Wilson v. Henry*, we should deem them sufficient for that purpose. In *Jones v. Collins*, 16 Wis., 594, where there was a constant conflict and contest for the possession, this court said the former owner was not dispossessed by the record of the tax deed. And therefore we think that acts of mining and digging for lead ore upon the land — acts which are not merely occasional, fugitive and desultory, but are as continuous and constant as the nature of the business and customs of the country permit or require, do amount to such an assertion of ownership and possession as will interrupt the running of the statute in favor of the tax deed. It is said that it is only the ordinary use and cultivation of the soil for the purposes of agriculture, which constitutes adverse possession under our statute. See ch. 22, Laws of 1859, secs. 32–4, and sec. 7, ch. 138, R. S. The provisions of the revised statutes doubtless in the main relate to the cultivation and use of the land for purposes of husbandry. It is natural that this should be so, because agriculture is the leading industry of the country, the great basis of its wealth, and the majority of the laboring population are deeply interested in the matter of the settlement of titles of farming lands. But we do not think it was the intention of the statute that the use of the land must be for agricultural purposes alone in order to constitute adverse possession. There are lands which are wholly unfit for cultivation, but which con-

tain rich and extensive lodes of mineral.   Mining is an important branch of industry, and it is essential that titles to mineral lands be settled, as well as other titles.   And we should be unwilling to say that the actual occupation and possession of land for mining purposes would not constitute adverse possession as much as the cultivation of the soil or raising crops thereon. And, where the original owner continues in the actual occupancy and possession of the land for mining purposes for any part of the three years after the tax deed is recorded, this must be regarded as such a possession as will drive the claimant under the tax deed to his action to prevent the bar of the statute. When the extent of the mining operations comes up to the offers of proof which this court considered in *Wilson v. Henry*, we are clear that this result must follow.

In *Sydnor v. Palmer*, 29 Wis., 228, the court, in considering the question as to what is the character or requisite of the possession, or what acts will make the possession adverse under sec. 7, ch. 138, throws out the remark, that it is clear the provision relates and is intended to apply only to the use and occupation of land for the purposes of husbandry ; and that the use and occupation of the land for the purpose of digging mineral, or for other works and operations beneath the surface and not connected with agriculture or the ordinary use and cultivation of the soil, would not present a case for the application of the statute.   This remark was unnecessary for the decision of the case, and it is so stated in the opinion.   Still the defendant relies upon it more or less to sustain the construction of the statute for which he contends.   In the broad sense in which the language is used or is attempted to be applied, we think the remark needs qualification.   The doctrine of the case of *Sydnor v. Palmer* was not supposed to be in conflict with that of *Wilson v. Henry* by the chief justice, who wrote both opinions, nor did the other members of the court understand that it was.

There were a number of other points discussed in the case, but we confine our opinion to the questions above noticed.

*By the Court.*— The judgment of the circuit court is reversed, and a *venire de novo* awarded.