CLARK and others vs. THE CITY OF JANESVILLE.

The charter of the city of Janesville provided that the common council might
submit to a vote of the people of said city the question whether the city
should subscribe to the stock of a certain railroad company, and in case of

January Term,
1861.

CLARK et al.
v.
THE CITY OF
JANESVILLE.

an affirmative vote of the people on that question, empowered the council to make such subscription and issue bonds of the city to the amount thereof; but the council submitted the question to the people, and the people voted affirmatively thereon, and the subscription was made and bonds issued, *before* the charter was published so as to become operative. *Held*, that after the charter took effect, the council was not authorized either to make such a subscription and issue bonds thereon, without again submitting the question to the people in accordance with the charter, or to ratify and confirm the subscription previously made and the bonds previously issued.

APPEAL from the Circuit Court for *Jefferson* County.

A former decision of this court in this case will be found in 10 Wis., 136. Subsequently the plaintiffs, by leave of the circuit court, amended their complaint. The amended complaint was demurred to, as not stating facts sufficient to constitute a cause of action, and the court made an order sustaining the demurrer, from which the plaintiffs appealed. The material allegations of the amended complaint are stated in the opinion of this court.

*George B. Ely*, for appellant, contended that persons dealing in the bonds of a city, though bound to look to the law to see whether their issue was authorized, are not bound to inquire whether the city has taken the several steps prescribed by law as to the manner of issuing such bonds (*Knox Co. vs. Aspinwall*, 21 How., 589; *Clark vs. City of Janesville*, 10 Wis., 136); that if, therefore, the city authorities had issued these bonds after the charter went into effect, without previously submitting the question to a vote of the people, the bonds would be valid; and that those authorities had equal power to make a binding ratification of bonds already issued; that this case came under the principle of the decision in *Mills vs. Gleason*, 11 Wis., 470; and that if submission after the charter became operative was necessary, the legal presumption from the complaint is that there was such submission.

*J. A. Sleeper*, for respondent, argued that the mayor and council had no authority to subscribe for railroad stock, except when authorized by a vote of the people, as provided in the charter, and no authority to issue bonds, except for stock thus subscribed; that the people of the city had no power under the charter, either to issue such bonds or to

ratify their issue; that the allegations in the amended complaint that the city has, at sundry times since the publication of the charter, ratified the bonds and the stock subscription, when taken in connection with the other portions of the complaint, must be regarded as merely an allegation that the city authorities have ratified them; that had the common council subscribed the stock and issued the bonds after the charter was published, no vote of the people being taken, the acts would have been unauthorized, and every person dealing in such bonds would have been chargeable with notice of the want of power in the council (*Delafield vs. The State of Illinois*, 2 Hill, 159; *Same Case*, 26 Wend., 192); and that the council had no power to ratify an act which they had no power to perform.

April 10.

*By the Court*, COLE, J. At a former term, when this case was before us, it was decided that the charter of the city of Janesville was a general law, and was not in force until published. As a matter of course, all the proceedings of the common council in submitting to the legal voters of the city, according to the provisions of the charter, the question whether said city should take stock in any railroad running to or through it, as well as the election, the subscription to the stock of the company, and the issuing of the bonds for the same, were totally unauthorized and void acts. The action of the city authorities and of the people, in that regard, must have the same legal effect as though no charter had ever been passed, and no more. The bonds and coupons were therefore held to have been issued without any authority of law, and consequently to be invalid in the hands of the appellants. The case then went back to the circuit, where the appellants obtained leave and amended their complaint in certain particulars. The material allegation in the amended complaint was, substantially, that after issuing the bonds, the city of Janesville did, at sundry times, between the fourth day of October, 1853—the day the charter was published and went into operation—and the commencement of the action, ratify, affirm, recognize, confirm, approve and adopt the subscription to the stock of the

railroad, and did ratify affirm, recognize, confirm, approve and adopt the bonds issued by the city to pay for the stock thus subscribed. It is also alleged that the city, ever since the subscription to the stock of the railroad company, has owned and held the stock for which the bonds were given. And the sole question arising upon the demurrer is, whether these allegations in respect to the ratification of the subscription to the stock of the company, and of the bonds and coupons which were issued in payment of the same, are sufficient to establish the liability of the city upon them. We are of the opinion that they do not show that the subscription and bonds have been ratified in such a manner as to render them binding and valid against the city.

The general rule that an unauthorized act of an agent may, by subsequent ratification, become binding upon the principal, is not denied. Were the contracts such as the city authorities might make, by virtue of either the express or implied powers conferred upon municipal corporations, then it might be said that the case came within the above rule. But the common council could not make the subscription to the capital stock of the railroad company, or issue the bonds in payment therefor, by virtue of the general powers conferred upon the municipal corporation. The power to subscribe the stock must be expressly conferred upon the corporation by the legislature. Nor did the common council, even under the charter, have the original authority to make the subscription at its pleasure. The charter provides that the common council of said city shall have *power* to submit to the legal voters thereof, the question whether said city shall take stock in any railroad running to or passing through said city, by giving notice in a given way and for a given time. And if a majority of the votes cast on such question be in favor of taking stock, then the common council, by resolution, may authorize the mayor to subscribe for the city the amount of stock so voted to be taken. Sec. 7, chap. 4, Charter of the City, Priv. Laws 1853, p. 203. Thus it will be seen that the common council had in the first place the power of submitting to the legal voters of the city the question of taking stock in any rail-

January Term, 1861.

CLARK et al. v. THE CITY OF JANESVILLE.

road.   In substance and reality the common council submit the proposition to the people.   The legal voters of the city affirm  or  reject  the  proposition by a general vote.   If the vote  is  in  favor  of  the subscription,  the  common  council could then authorize the mayor to make it.   If adverse, the common council had  not  power  to  authorize the mayor to make it.   So, after all, the power of  determining  whether the subscription  should  be  made, rested with the voters of the city rather than with the common council.   For although the power of making the subscription was  conferred upon  the  corporation, this power could  only be exerted at the will of the electors.   The common council could not originally issue the bonds and  make the subscription.   It could not contract the indebtedness except upon a condition never fulfilled.   If the city authorities had subscribed the stock without an affirmative vote of a  majority of the electors, their action would  have been unauthorized, and would not have bound the city.   How, then, can they be said to have ratified and rendered valid these bonds, which they could not have issued upon their own motion?   We confess we cannot understand how the common council could, by subsequent  ratification, render a  contract valid which they could not originally make.   And this shows the marked and fundamental distinction which exists between this case and that of *Mills vs. Gleason*.   In that case the city authorities would have been authorized, by virtue of the general powers of municipal corporations, to contract the indebtedness and issue the bonds, had the charter been published.   After the charter was published, they could render valid by ratification an  act  which  they could  do.   Here it is otherwise. The common council could  not originally do the act; they could not make the subscription and issue the bonds; with what propriety, then, can it be said that they could by subsequent ratification render them valid?   The very notion of ratification presupposes that the party ratifying might have originally done the act or made the contract.   This would seem to be a very obvious deduction.

But it is said that the object sought by the legislature in requiring the question of taking stock to be submitted to

the people, was to ascertain the wishes of the people who were to bear the burden of taxation, and that this object was attained by the submission actually made. This, however, does not reach the difficulty. For if the charter was not in force until published, the acts of submission and the election were mere idle acts, wholly unauthorized and of no importance whatever. The legal voters were to determine at an election held under the charter and in conformity to its requirements, whether the power of subscribing to the stock should be exercised by the city authorities. This was a condition precedent to making the subscription. We must therefore hold, that as the common council could not in the first instance subscribe the stock and issue the bonds, without being authorized so to do by an affirmative vote of the electors, they cannot by any subsequent act render them binding and obligatory upon the city. The allegations of the complaint seem to bring the case strictly within the principle laid down in *Delafield vs. The State of Illinois*, 2 Hill, 160, and 26 Wend., 1 and 2, where it was held that an unauthorized contract entered into by state agents, acting under limited powers conferred by statute, could not be ratified by any acts of the governor or other officer, but only by the state itself. If the public officers could not originally make the contracts, it was said they could not ratify them. This doctrine, so reasonable and just, governs the case under review. We think, therefore, that the demurrer was properly sustained.

Order of the circuit court sustaining the demurrer affirmed.