## HAZELTON vs. WEEK, imp.

*May 29 — June 23, 1880.*

*Trespass to land.*

Where A., without B.'s consent, enters upon B.'s land, and removes there-from logs which C. has unlawfully cut thereon and undertaken to sell to . A., such entry and removal is a trespass to the realty, though made in ignorance of B.'s rights.

APPEAL from the Circuit Court for *Marathon* County.

The action was against Frank Hughes and *John Week.* Hughes made no answer; but *Week* answered with a general denial. On the trial of the issue thus made, there was a special verdict, upon which the court rendered a judgment in *Week's* favor; and from this judgment the plaintiff appealed.

The cause was submitted on the brief of *G. W. Hazelton,* the appellant, in his own behalf, and that of *G. W. Cate* for the respondent.

For the appellant it was contended, among other things, that an action for a joint trespass to real estate in cutting and removing timber lies against any and all parties who took part in the trespass. One trespasser cannot protect himself by an alleged agreement with another. Bacon's Abr., " Trespass, G;" Comyn's Dig., "Trespass, B, 2;" *Williams v. Sheldon,* 10 Wend., 654; *Woodruff v. Halsey,* 8 Pick., 333; *Vosburgh v. Moak,* 1 Cush., 453; *Richardson v. Emerson,* 3 Wis., 319; *Webber v. Quaw,* 46 id., 118; *Coats v. Darby,* 2 Coms., 517; *McIntyre v. Green,* 36 Ga., 48; *Williamson v. Fischer,* 50 Mo., 198; *Smith v. Felt,* 50 Barb., 612; *Olsen v. Upsahl,* 69 Ill., 273. It is immaterial whether or not a defendant knew that he was a trespasser. Purchase of the property, although in good faith, from a person having no title, is no defense. *Smith v. Webster,* 23 Mich., 298. Assent to the trespass by the person for whose benefit it was committed,

renders him a trespasser *ab initio*. *Allred v. Bray*, 41 Mo.,
484; *Judson v. Cook*, 11 Barb., 642; *Underhill v. Raynor*, 2
Hilt., 319.   Each participant is liable for the whole injury.
*Brown v. Allen*, 4 Esp., 158; *Allen v. Craig*, 1 Green (13 N.
J. Law), 294; *Clark v. Bales*, 15 Ark., 452; *Hair v. Little*, 28
Ala., 236; *Berry v. Fletcher*, 1 Dillon, 69.   See also *Merest
v. Harvey*, 5 Taunt., 442; *Dougherty v. Stepp*, 1 Dev. & Bat.
Law, 371; *McCall's Adm'r v. Capehart*, 20 Ala., 521; *Norvell
v. Gray*, 1 Swan, 96; *Pierce v. Hosmer*, 66 Barb., 345;
*Dreyer v. Wing*, 23 Mo., 434; *Pierce v. Hall*, 41 Barb., 142.

For the respondent it was argued, *inter alia*, that the de-
fendant *Week* is not answerable for the wrongful cutting of
the timber.   He purchased the logs in good faith without
notice of the trespass.   At the time he took possession of them,
they were in the possession of the Hughes brothers on plaint-
iff's land.   This possession by the Hughes brothers was such
evidence of title in them, that a purchaser from them in
good faith, supposing them to be the rightful owners, could
not be charged with a wrongful taking. · *Wilson v. Barker*, 4
Barn. & Ad., 614; *Nash v. Mosher*, 19 Wend., 431.

COLE, J.   In the court below this was treated as an action of
trespass for unlawfully entering upon the plaintiff's land and
cutting and removing therefrom a quantity of pine timber.
There was no dispute on the trial that the logs were cut on
the plaintiff's land, and that the defendant *Week* had them and
manufactured them into lumber.   Nor was there any claim that
the defendant *Week* himself cut any of the logs.   It is clearly
established by the evidence, and the fact is conceded, that he did
not, but that the defendant Hughes, with his brother, and per-
sons employed by them, actually cut the timber.   The conten-
tion in the court below was, whether *Week* employed the brothers
Hughes to cut the timber, agreeing to pay them for their work,
or whether he simply agreed to buy the logs of them, which
they cut on their own responsibility.

It seems to have been assumed by the learned circuit court, that if *Week* merely agreed to buy the logs which Hughes cut, then he would not be responsible in this action of trespass; for the court in effect charged upon this question, that if the jury found from the testimony that *Week* employed Hughes to cut the logs for him, agreeing to pay him for his work, then he would be liable for the trespass; but if the agreement simply was that *Week* would buy the logs which Hughes got out, and then *Week* took them under that arrangement, without notice or knowledge of the trespass by Hughes, then he would not be liable in an action for such trespass. This charge was excepted to by the plaintiff; and in view of the evidence there can be no doubt that it was well calculated to mislead the jury to his prejudice. It may be assumed at the outset that *Week* purchased the logs of the Hugheses, as he said he did, in good faith, without notice that they had been guilty of trespass in cutting them. He was sworn on his own behalf on the trial, and testified to this effect. He says that the agreement was that he was to purchase the logs which the Hugheses should cut, at three dollars per thousand, they furnishing their own timber. He admits that he went upon the plaintiff's land not knowing who owned it at the time, and examined the logs, which were banked thereon. He denies, however, that he knew these logs had been cut upon this land. But he says that he furnished a man to aid in scaling the logs, and on his cross examination makes this admission: "I removed the timber from the land, or my men did, and I paid them for it. Frank helped, and that was a part of the bargain, that he should help get the logs into the creek. I paid for men to go up and get the logs and drive them down. . . . I did not know when I made the bargain with the Hugheses, in the fall of 1875, that they had previously trespassed on lands where they had no right."

Now, assuming, as we do, that this is a true version of the transaction — that *Week* had merely agreed to purchase of the Hugheses the logs which they might cut and get out — yet if

the Hughes brothers entered upon the plaintiff's land without right or authority, and committed a trespass by cutting the timber standing thereon, and *Week*, with his servants, also entered upon the premises and removed the logs and converted them to his own use, he is responsible equally with the Hugheses to the owner, or plaintiff, for the value of the logs thus carried away. The Hughes brothers certainly acquired no title to the timber by severing it from the soil; they were simply wrongdoers, and consequently could confer no title by the formality of a sale. As soon as the timber was cut it became the personal property of the owner of the land, and *Week*, in going upon the premises and removing the logs without authority from such owner, was a trespasser, and liable in damages for the wrong. It is not essential to that responsibility that the element of a willful or intentional trespass should enter into the transaction; it was sufficient that he was taking away property which he had no right to remove. If he did not know who owned the land, he was bound to know that the logs severed from the soil were the property of the owner, whoëver he might be, and that without the consent of such owner he had no right to interfere with the property. The rule of law is well settled in this court.

In *Dexter v. Cole*, 6 Wis., 319, which was an action of trespass, it appeared that the defendant, who was a butcher in Milwaukee, was driving some sheep he had purchased, towards the city, upon the highway, when they became mixed with a small lot belonging to the plaintiff, which were running at large upon the highway. The defendant drove the whole flock into a yard near the road, for the purpose of parting them, and did throw out a number which he did not claim, and pursued his way with the remainder to his slaughter-house, where they were slaughtered in his business. The evidence tended to show, and the jury found it did show, that some four of the plaintiff's sheep remained in the flock, and were driven to Milwaukee and slaughtered. The court sustained the action on

the ground that any unlawful interference with, or acts of ownership over, property, to the exclusion of the owner, was sufficient to sustain the action, and that it was not necessary to show actual or forcible dispossession of property; that the intent did not necessarily enter into the trespass; that it was sufficient if the act done was without a justifiable cause or purpose. But perhaps the case nearest in point to the one at bar is *Higginson v. York*, 5 Mass., 341. The head note thus states the case: "A., having entered the close of B., and having cut a quantity of cord wood, sells the same to C., who hires D., the master of a coasting vessel, to go in company with C. and transport the wood to market. D. was held liable for the value of the wood in an action of trespass *quare clausum fregit*, brought by B., although it was agreed he was ignorant of the original trespass committed by A."

In *Hobart v. Hagget*, 12 Me., 67, which was an action of trespass for taking an ox belonging to the plaintiff, it was proved that the defendant met the plaintiff in the street, and bought of the latter an ox, which the plaintiff directed him to go and take out of his enclosure, and the defendant, by mistake, took the wrong ox. The defendant was held liable in the action. The court say: "The taking of the plaintiff's ox was the deliberate and voluntary act of the defendant. He might not have intended to commit a trespass in so doing. Neither does the officer, when, on a precept against A., he takes, by mistake, the property of B., intend to commit a trespass; nor does he intend to become a trespasser who, believing that he is cutting timber on his own land, by mistaking the line of division, cuts on his neighbor's land; and yet in both cases the law would hold them as trespassers." Cooley on Torts, 348, lays down the same doctrine.

But it would seem to be quite unnecessary to extend our remarks upon this question. The above authorities, and others which might be cited, of the same import, abundantly show that the defendant *Week*, by entering upon the premises of

the plaintiff and removing therefrom the logs in controversy, was simply a wrongdoer, and is responsible in damages for the value of the property taken. If he did not intend to commit a trespass, of course no exemplary damages could be recovered against him; but he is surely liable, upon every just principle, for the value of the property which he unlawfully removed and converted to his own use. Therefore, without noticing the other questions discussed on the briefs of counsel, we must reverse the judgment and order a new trial.

*By the Court.* — It is so ordered.