Fleming and another vs. Sherry and another.

FLEMING and another, Respondents, vs. SHERRY and another, Appellants.

*October 10 — November 8, 1888.*

LOGS AND TIMBER: WRONGFUL CUTTING: MEASURE OF DAMAGES. *(1) Action by tax-title claimant against original owner. (2) Conditional title: Unrecorded tax deed. (3-5) Notice to original owner of transfer of title: Duty of inquiry: Reliance on abstract of title certified by register of deeds. (6) Belief in validity of title: Good reason not necessary.*

1. Sec. 4269, R. S., as amended by ch. 239, Laws of 1882, is applicable to an action by one claiming under a tax deed, against the owner of the government title, for the cutting and removal of timber from the land.

2. Sec. 4269, R. S., being penal in its nature, must be strictly construed; and the owner of a mere conditional title *(e. g.* one claiming under an unrecorded tax deed) which does not carry with it the right of possession, is not within the section, and cannot recover the penalty therein prescribed in an action against the original owner for a trespass committed upon the land while the plaintiff's title thereto remained conditional.

3. One who seeks to recover the damages prescribed by sec. 4269, R. S., for a trespass upon his land committed by one who once owned the same but whose title has been divested by tax proceedings or other process of law, must have seen to it that such original owner was informed of all the material facts essential to a transfer of the title.

4. In 1878 a tax deed of certain land was issued to the plaintiffs and duly recorded. In 1883 the defendant S. purchased the land from the owner of the government title. At the time of the purchase S. had an abstract of title, certified by the register of deeds, showing that no tax deed of the land had been recorded between August, 1877, and March, 1880, and he had no knowledge of the plaintiffs' deed. In December, 1886, the plaintiffs notified him that they took a tax deed of the land in March, 1878, but did not state that such deed had been recorded. Afterwards S. cut timber from the land. The plaintiffs notified the defendant I., who was employed by S. to superintend such cutting, that they owned the land, and forbade the cutting of timber, but did not state any particulars of their title. *Held,* that such notices to the defend-

ants were not sufficient to charge them with the duty of making inquiry and ascertaining whether the plaintiffs' tax deed was of record.

5. In an action to recover the damages prescribed by sec. 4269, R. S., as amended by ch. 239, Laws of 1882, for the cutting of such timber, the jury should have been instructed, on the question of the good faith of S., that the certificate of the register of deeds, made about two years after the recording of the tax deed, showing no tax deed of record, was such evidence as S. might fairly rely on if he believed the certificate to be correct.

6. If the defendant in such an action cut the timber in good faith, believing that he had a valid title to the land, it is not necessary, in order to defeat a recovery of the damages prescribed by that statute, that he should have had *good reason* so to believe.

APPEAL from the Circuit Court for *Marathon* County.

In the winter of 1886–87 the defendant *Henry Sherry* cut, carried away, and converted to his own use a quantity of pine timber theretofore standing and growing upon a forty-acre lot of land in the county of Marathon, which land he purchased in 1883 of one Harriman, who owned the same by mesne conveyances from the government. The defendant *J. S. Ingersoll* was in the employ of *Sherry,* and superintended the cutting and removal of the timber. When *Sherry* purchased the land he had an abstract of the title thereto, purporting to be certified by the register of deeds of said county under his seal of office, showing title in Harriman. No mention was made in the abstract of any tax deed or delinquent taxes upon the land between 1877 and 1880.

In March, 1878, a tax deed of the land was duly and regularly executed by the proper officer to the plaintiffs *Fleming*, or one of them, and duly recorded. It was issued pursuant to a sale of the land for nonpayment of the taxes of 1873. *Sherry* and his grantors paid the taxes assessed upon the land, or redeemed from tax sales, for the years 1877 to 1885 inclusive, with the exception of those assessed in the years 1880 and 1881. The plaintiffs redeemed from

the sale for the delinquent taxes of 1880. It does not appear that the land was assessed in 1881.

About the time the defendant commenced cutting the timber, perhaps a little earlier, one of the plaintiffs notified *Sherry* by letter dated December 12, 1886, that he took a tax deed on the land in March, 1878. After the defendants commenced cutting the timber, one of the plaintiffs also notified *Ingersoll* that the plaintiffs owned the land, and forbade the cutting of the timber. He did not state to *Ingersoll* the particulars of his title, nor the source from whence it was derived. The letter of December 12, 1886, contained the first and only actual notice to *Sherry* of the existence of the tax deed. It did not state that such deed had been recorded. *Sherry* thereupon communicated with Harriman on the subject, who informed him that all taxes upon the land had been paid for each and every year preceding the sale to *Sherry*. When *Ingersoll* was informed that plaintiffs claimed to own the land he replied that *Sherry* ordered him to cut the timber as quickly as possible, and that plaintiffs might try their title by bringing suit. Up to the time of the entry to cut the timber the land had always been vacant and unoccupied. The foregoing facts were proved upon the trial of the action.

The instructions given by the court to the jury are sufficiently stated in the opinion. The jury found specially: (1) That the stumpage value of the timber cut by the defendants and taken from the land in question was $1,650; (2) that the market value of the lumber manufactured from such logs at the *Ingersoll* mill was $3,162.50; (3) that the same was cut under authority and claim of title of *Henry Sherry*; (4) that before entering upon such land *Sherry* in good faith acquired title thereto; and (5) that at the time the timber was cut *Sherry* was not justified in believing that he had a good title to the land. The jury also returned a general verdict for the plaintiffs, assessing their

damages at $3,162.50. A motion by the defendants to set aside the verdict, and for a new trial, was denied by the court, and judgment was thereupon entered pursuant to the general verdict. The defendants appeal from the judgment.

For the appellants there was a brief by *Hooper & Hooper*, and oral argument by *Moses Hooper*.

For the respondents there was a brief by *Cate, Jones & Sanborn*, and oral argument by *D. Lloyd Jones*. They contended, *inter alia*, that the certificate of the register of deeds, made in March, 1880, was not evidence that no conveyance of this land had been recorded between that time and December, 1886. The letter written by the respondents to *Sherry* did not state when they recorded this tax deed. As a matter of fact it was recorded in March, 1878, but if recorded after March, 1880, it would have been equally good.

LYON, J.    It is conceded that the plaintiffs were the owners of the land upon which the timber was cut by the defendants, and are entitled to recover damages therefor. The only controversy relates to the measure of damages. The plaintiffs claim that they are entitled to the damages given by sec. 4269, R. S.; while the defendants claim that they are only liable for the actual damages, that is to say, for the value of the stumpage. The plaintiffs were allowed to recover the larger damages of the statute. Whether they were entitled thereto under the circumstances of this case, and, if so, whether the jury were properly instructed in that behalf, are the questions to be determined on this appeal.

In *Smith v. Sherry*, 54 Wis. 114, the question was left open and undetermined " whether a tax-title claimant, who has never acquired the actual possession of the land, can recover against the former owner, as damages, the highest

market value, under sec. 4269, R. S., for timber removed while the same is in the latter's possession." The opinion in that case was filed January 10, 1882. At the session of the legislature which convened immediately thereafter, ch. 239, Laws of 1882, was enacted, which adds to sec. 4269 the following: "Provided, that when the defendant shall have in good faith acquired a title to and entered upon the land under the same, believing such title to be valid, and shall have cut the timber therefrom under such circumstances, then the plaintiff, if he shall recover, shall recover only the actual damages sustained by reason of such cutting. The defendant in his answer shall state the facts upon which he relies to establish such claim of title, and the burden of proof shall be on the defendant."

We think it was the intention of the legislature in this enactment to settle the question thus left open in *Smith v. Sherry*, by subjecting the owner of the government title, who has taken timber from the land after his title has been divested, to the penalties of sec. 4269, unless he brings himself within the saving clause of the amendment of 1882. To do this he must not only prove that he acquired his title in good faith, but also that he entered upon the land, cut the timber, and removed the same therefrom, believing his title to be valid. And further, it cannot truly be said that he believes he has a valid title, if he has knowledge or notice of the facts which show that his title has been divested and transferred to another. *Warren v. Putnam*, 68 Wis. 481. That case also holds that knowledge by the original owner of a mere claim by another of adverse title to the land, is not necessarily incompatible with good faith on the part of such former owner in taking the timber from the land. These propositions do not seem to be controverted by counsel on either side.

The evidence in the present case tending to show that *Sherry* cut and removed the timber in question in good

faith, believing he had a valid title to the land from which he took it, is very strong. He had an abstract of title of the land, purporting to have been certified by the proper register of deeds under his official seal, which showed that no tax deed of the land had been recorded between August, 1877, and March, 1880. It is common knowledge that such abstracts and certificates are frequently accepted as sufficient evidence of the state of the record title to land, and prudent men purchase land and pay their money therefor on the faith of them. *Sherry* did so in this case, and it is manifest that he had no knowledge, or even suspicion, that the plaintiffs had a tax deed on his land, until he received *Fleming's* letter of December 12, 1886, informing him that the writer took a tax deed thereon in 1878. That letter did not inform *Sherry* that such tax deed was recorded, and there is not the slightest proof in the case that he had any notice, before the trial, from any source, that it was recorded. This is a most significant fact, for until the deed was recorded it conferred upon the grantees therein at most only a conditional fee, without the right of possession. Had the tax deed remained unrecorded, the plaintiffs could not have maintained ejectment for the land, and the same would have been subject to redemption. It was so held, after much consideration. in *Hewitt v. Week*, 59 Wis. 444. Hence notice to *Sherry* of the existence of a tax deed was not notice to him that his title was absolutely divested. At most it was only notice that a conditional estate in fee had been, so to speak, carved out of his absolute estate, which conditional estate did not interfere with his right to the possession of the land, and which he might terminate at any time by redemption. Moreover, *Sherry* was told by Harriman, his grantor, that all previous taxes had been paid, and this information might reasonably induce the belief that the tax deed (if one existed) was invalid,— perhaps the belief that none existed. It may be observed, also,

that in the interview between the defendant *Ingersoll* and one of the plaintiffs the latter did not state any particulars of his title. He merely claimed that the plaintiffs were the owners of the land. So *Ingersoll* had no better notice of the plaintiffs' title than *Sherry*.

If the grantee in an unrecorded tax deed can, either before or after he records his deed, recover against the original owner for taking timber from the land covered by such deed while it remained unrecorded, we are not prepared to hold that he may recover the penalty of sec. 4269, in addition to actual damages. That section must receive a strict construction. *Cotter v. Plumer, ante,* p. 476 (decided herewith). That rule requires us to hold that the owner of a mere conditional title, which does not carry with it the right of possession, is not within the section and cannot recover the penalty therein prescribed in an action against the original owner for a trespass committed upon the land while the plaintiff's title thereto remained conditional.

In this case, however, the tax deed was of record when the timber was taken. It is conceded that *Sherry* then had notice that such a deed was in existence. The controlling question is, therefore, Did he know, or had he notice, when he took the timber, that the deed had been recorded? The answer to this question is the test of *Sherry's* good faith. Had the court instructed the jury that the proofs conclusively established the good faith of *Sherry*, it would be difficult to hold the instruction erroneous. But assuming, for the purposes of the case, that there was sufficient in the testimony to send that question to the jury, we find manifest error in the instructions given by the court on that subject. In the charge to the jury we find the following clause: "Mere notice that the plaintiffs claimed the land would not bind *Mr. Sherry* to judge at his peril the validity of such claim, if he believed with good reason that he was the owner. But if he was placed in possession of facts, be-

fore the cutting, showing that the *Flemings* were the own-
ers,— was informed by the *Flemings* before such cutting
that they held the deed which is the foundation of their
title, and such information was such as should place a rea-
sonably careful man upon inquiry, and *Mr. Sherry*, disre-
garding such information, thereafter ordered the timber
cut,— he was not, under such circumstances, justified in
believing himself the owner of the land."

Under this instruction it was competent for the jury to
find that the notice by plaintiffs to *Sherry*, of December 12,
1886, that one of them took a tax deed on the land in 1878,
and the general claim of title made to *Ingersoll* (which is
no more significant than the notice to *Sherry*), were suffi-
cient to cast upon the defendants the duty of making in-
quiry and ascertaining whether such tax deed was of record.
We hold, as matter of law, that such notices alone were
not sufficient to charge the defendants with that duty. A
person who seeks to recover the higher, and sometimes un-
conscionable, damages of the statute for a trespass upon his
land committed by one who once owned the same but
whose title has been divested by tax proceedings or other
process of law, must see to it that such original owner is
informed of all the material facts essential to a transfer of
the title. If ignorant of these, he should be held to have
acted in good faith and in the belief that he was still such
owner when the trespass was committed. The plaintiff
cannot give notice to a person whose title has been thus di-
vested, of one material fact, and (as in this case) suppress
another material fact, and then successfully claim that the
information given is sufficient to put the other upon inquiry
to find out, as best he may, the existence of the suppressed
fact, and thus hold him liable to the penalty of the statute
if he has taken timber from the land after his title was lost.

There is another objection to the instruction, not so vital,
perhaps, as that already commented upon, but still worthy

of notice.   In order to avoid the penalty of the statute, the jury were told, not only that *Sherry* must have cut and removed the timber in good faith, believing that he had a valid title to the land, but also that he must have *good reason* so to believe,— that he must be *justified* in so believing. Nothing of the kind is expressed in the statute.   It only requires good faith on the part of the trespasser, and the belief that he has a valid title.   It might well be that some jurors would think the trespasser honestly believed he had a good title, and yet not think his reasons for so believing were very sound.   Of course, a jury could not find the existence of the belief without some reasonable grounds upon which it was predicated.   But when the belief is found to exist, the jury should not be required to enter upon a nice analysis of the grounds thereof, and to find against the belief if they judge those grounds unsatisfactory or inconclusive.   It were better and safer to confine the instructions to the language of the statute.

We do not forget that the failure of the plaintiffs, in the letter of December 12, 1886, to inform *Sherry* that the tax deed was of record, was suggested to the learned counsel for the defendants on the argument, by a member of the court, and that the counsel did not seem to regard the circumstance as of any importance.   Indeed he admitted that the letter of December 12, 1886, might fairly be considered as implying a notice that the tax deed was recorded.   The concession would not have been made, we think, could counsel have had time to consider the matter.   Besides, the case of *Hewitt v. Week, supra*, was temporarily forgotten, no doubt, or counsel would have discovered more in the suggestion thus made than he did.   The concession was unadvisedly made, and inasmuch as we regard it against the law we cannot act upon it.

The court was requested, on behalf of the defendants, to give the following instruction to the jury: " The certificate ·

of the register of deeds, showing no tax deed of record, made about two years after the record of such tax deed, was such evidence as *Sherry* might fairly rely on if he believed the certificate to be correct, and from which he might be justified in believing no such tax deed was on record, for the purpose of showing good faith in this action." The court refused to give the instruction, and its equivalent is not contained in the general charge. It follows, we think, from what has already been said, that the instruction is correct and should have been given.

The errors above indicated are fatal to the judgment. Although we must order a new trial, yet, if neither party expects to be able to change the proofs materially on another trial, we venture the suggestion that the parties would do well to stipulate to allow judgment to go for the plaintiffs for the value of the stumpage as found by the jury, and interest thereon from date of verdict to date of judgment, thus saving the delay and expense of another trial.

*By the Court.*— The judgment of the circuit court is reversed, and the cause will be remanded for a new trial.