## The People v. Matthew H. Maynard.

*Washington County invalid.* The organization of Washington county out of part of Marquette county, held invalid.

*County organization, what requisite.* An act purporting to organize a new county out of territory detached from an old one, but which contains no organized townships, and makes provision for none, is inoperative and void; as without such townships there can be no legal elections, and no means of organizing.

Such an act is not made effective by the subsequent passage of an act organizing a single township in the new territory, leaving the remainder not provided for.

A county can not be organized without the means of exercising all its necessary functions, and requires more than one organized township, as the board of supervisors can not exist without more than one member, and there can be no county without such a board.

Where townships have become organized under a statute and have acted for many years, and have been recognized by the various state and local authorities, it is too late to inquire into the validity of the law providing for their original creation, and their corporate existence can not be questioned.

The legislature can not lawfully deprive qualified voters of a county of their right of suffrage, by organizing townships in only a portion of it; leaving the remainder unorganized.

The division of a single county attached to an existing judicial district into two counties, will, unless otherwise provided, leave both counties within the same district.

*Heard May 16th.  Decided May 25th.*

*Quo Warranto.*

The information in this case was filed by William L. Stoughton, the Attorney General, against the defendant for intruding into and usurping the office of county treasurer of Marquette county.

The defendant pleaded that by the organization of Washington county the residence of the treasurer of Marquette county was thrown into the new county, thereby creating a vacancy in the office, to fill which the board of supervisors of Marquette county appointed him treasurer. One of the pleas relied on the "*act to organize the county of Washington,*" and the other on that act, and also an additional "*act to organize the township of Negaunee, in the county of Washington.*" The replication to the first plea alleges that the county of Marquette consisted of but three townships, viz: Marquette, Negaunee and Chocolay, and that only parts of the former two were embraced in the new county, and that such parts contain 3,500 inhabitants and 700 electors. The replication to the second plea alleges the same facts as replied to the first, and also sets forth the portions of the parts of the two townships, which portions were included in the new township, and avers the number of inhabitants and electors of the portions of those parts, which portions were not included in the new township; and also sets forth the part of Negaunee remaining in Marquette county, and left, by the new township act, without any township organization; and avers the number of inhabitants and electors of that part. To these replications a demurrer was interposed, and the principal questions in the case relate to the validity of the acts aforesaid.

*A. W. Buel, A. Pond, C. I. Walker* and *G. V. N. Lothrop,* for the People.

1. The act of 1867 substantially violates the constitution in its letter and spirit, on the following grounds:

*a.* It undertakes to make the new county a corporation without giving it any corporate power to act, or accomplish any end or purpose whatever. — *Const. Art.* 10, § 1.

*b.* It makes no provision for the election of county officers; nor for a judiciary; nor could a board of supervisors exist under its provisions.

THE PEOPLE v. MAYNARD.

c. The constitutional right of suffrage and voting in all elections, with power and means for, exercising such right, is taken from the electors.

The position that the county act is unconstitutional is fully sustained by the following cases.— 2 *Gray*, 84; 20 *N. Y.* 447; 30 *Barb.* 349; 11 *Mich.* 63.

d. It makes no provision for organized townships, and without which the new county can never act, or exercise or assert the smallest right or power.

2. The county act, if not unconstitutional, is, at least, inoperative and void.

3. The township act does not aid the county act, to render it constitutional or operative.

*Levi Bishop*, for respondent.

1. The act of February 15, 1867, is not void, because it did not provide all the details for holding elections in the county of Washington.

It is a general rule in this country that there are no limits upon the legislative power of a state, except such as are created by the federal or the state constitution. The legislative body represents the sovereign power of the people.— 20 *Wend.* 381; 27 *Barb.* 593; *Smith's Com.* 236 – 309; 1 *Mich.* 295, 306, 307; 5 *Id.* 251; 13 *Id.* 127, 481.

A statute can not be declared void on the ground that it violates the fundamental principles of republican government, unless it comes clearly in conflict with some express constitutional provisions.— 4 *Mich.* 244; 13 *Id.* 481.

The act does not take away the elective franchise, or change the qualifications of voters. It simply creates or re-arranges the boundaries of certain municipal corporations. It does not violate any principles of free government, and it would not be void if it did.— 4 *Mich.* 244; 13 *Id.* 481.

A township which has not all the full details of an ordinary town organization may be still a body corporate

in law.   Such seems to be the opinion of this court.—
10 *Mich.* 250.

2.   The act of February 15, 1867, which created the
new county of Washington was not null and void on the
ground of unconstitutionality.

*a.*   The act by its terms creates a new county of part
of the territory of another.   By its terms it creates a muni-
cipal corporation, "with all the powers, privileges and im-
munities to which by law the other organized counties of
the state are entitled."

*b.*   If Washington county was created as such, then the
office of treasurer of Marquette county became vacant, be-
cause the treasurer thereof did not reside therein.   *Const.*
*Art.* 10, § 4;  1 *C. L.* §§ 390, 475.   And the board of
supervisors of Marquette county had power to appoint the
defendant to that office, as they did do.—1 *C. L.* § 380.

No given form, power, duty or property is essential to
the existence of a corporation.   If an act of the legislature
creates it as a corporate body, no given form, power or
property is essential to its vitality.

We claim, then, that this act created a new county by
the name of Washington, and though imperfect, it was still
a legal corporation.

3.   The two acts of February 15, and February 27, must
have had the effect to create a county, even if the first
did not.   If the existence of a township was essential to
the existence of a county corporation, we have it in the
second act.   This, too, in addition to the fact that a large
part of the old town of Negaunee, and a still larger part
of the old town of Marquette were in the new county, and
may be claimed to be the main bodies of those towns.

CAMPBELL J.

Defendant, being called upon to show by what warrant
he exercises the functions of treasurer of Marquette county,
pleaded that by the organization of Washington county,

the residence of the treasurer of Marquette was thrown into the new county, thereby creating a vacancy, which defendant was appointed to fill by the supervisors. One of the pleas relied on the "*Act to organize the County of Washington*," *approved February* 15, 1867; and the other relied on the same act, and a further "*Act to organize the Township of Negaunee, in the County of Washington*," *approved February* 27, 1867. Both acts were directed to take effect immediately.

The replication to the first plea sets up that the county of Marquette consisted of but three townships, to wit: Marquette, Negaunee, and Chocolay, and that only parts of the former two were embraced in the new county, and that such parts contain 3,500 inhabitants and 700 electors.

The replication to the second plea sets up the same facts as to the division of territory, and contains averments of the number of electors and inhabitants in the part of Negaunee left in Marquette county, and in the part of Marquette township of Washington county.

To these replications defendant demurred. And the principal legal questions refer to the validity of the statutes purporting to create and organize the county of Washington and town of Negaunee, and cut them off from Marquette, without making provision for the proper transaction of business, and the protection of the rights of the inhabitants.

The first statute declares that the territory described in it "is hereby organized into a separate county by the name of the county of Washington, with all the powers, privileges and immunities, to which, by law, the other organized counties of this state are entitled." The second section fixes the county seat. The third provides that at the annual township meeting in April thereafter, county officers should be elected, who should go into office on the first Monday of May thereafter. The fourth section names several persons as county canvassers. The fifth

provides that certain buildings in Negaunee may be used for county purposes, and makes the county a part of certain senatorial and representative districts.

The second statute undertakes to make the part of Negaunee contained in the new county successor to the entire town of that name, and to keep the old officers in office until superseded by new ones; and provides for a settlement of property and accounts between the two parts.

An organized county, under our constitution, signifies a county having within itself the necessary means for performing its functions independently of any other county; with its lawful officers and machinery for carrying out the powers and performing the duties belonging to that class of corporate bodies.

Among the necessary incidents to a county are subdivisions in which electors can lawfully vote, and townships whose supervisors conjointly may exercise the legislative and administrative powers of the corporation. The county officers are all elective, and the supervisors are necessary for taxation and for various other matters of business. Under the constitution, no one can vote except in the township or ward where he resides. — *Art.* 8, § 1. The same section gives the right of voting to all white male citizens who have resided here a sufficient length of time. And the townships in which elections are held must be organized townships. — *Art.* 11, §§ 1, 2.

Inasmuch, then, as a county can not become organized without the existence of townships, where elections may be held, and whose supervisors may constitute a county board, we must see whether this is provided for. The provisions requiring this board can not be construed as directory, or as compatible with its indefinite postponement. No county can subsist without it. The whole financial concerns of the county depend upon it.

The first statute does not undertake to create or organize townships. If such were already in active existence,

of course no such creation was necessary, as the general laws would then furnish the guide for their action in holding elections. The statute provides for the election of all county officers, and locates the new county in the proper legislative districts. It was claimed on the argument that no provision was directly made for placing it in a judicial district. But, inasmuch as the whole of the county was in the twelfth district, we think it still remains there. Had it included a part of two judicial districts, we might have found some difficulty in dealing with this objection, but, as it stands, we see no occasion for legislation on this point. The only inquiry must be, whether organized towns were already to be found in the new county. If they were, we see no difficulty in the way of the complete organization through the spring elections.

The pleadings show that there were but three townships in the county before the division. One of them remained untouched within the old county, and two were divided. These would, of course, continue as existing towns, and the territory taken away from them, until newly organized, or attached to some other town, would cease to have any township existence. This act, then, provided no means for organizing this detached territory, and no general law reaches the case, and, consequently, no elections could be had in it. And without such elections the act would be entirely inoperative and void.

It was suggested by an *amicus curiæ*, that, as we were bound to know judicially the existence of the various township organizations, we might be of opinion, upon examining the case, that there were townships actually organized within the territory set off. It may be well, therefore, to investigate this subject. At the beginning of the year 1857, the county of Marquette included on the north no higher than the 49th tier of towns. All the land east of range 26 was in the town of Marquette. Range 26 was all in the town of Carp River. All west of range 26 was in the

town of Iron. The present alleged county of Washington embraces all of the old town of Iron, a single section in Carp River (containing the public buildings), and some towns north of the 49th tier which were subsequently annexed to the town of Marquette. On the 10th of February, 1857, an act was passed entitled "*An act to provide for the organization of the township of Teal Lake, in the county of Marquette, and to define the boundaries thereof.*" This act created the town now known as Negaunee, by including in it parts of the towns of Iron and Carp River. It then abolished those towns, by transferring all their remaining territory to the town of Marquette. It is now suggested that no such purpose could be legitimately connected with the title of the act, which under the constitution must indicate the single object to be provided for. If this question had been raised immediately, we are not prepared to say that it would have been altogether free from difficulty. But, inasmuch as the arrangement there indicated had been acted upon for ten years before the recent legislation, and had been recognized as valid by all parties interested, it can not now be disturbed. Even in private associations, the acts of parties interested may often estop them from relying on legal objections, which might have availed them if not waived. But in public affairs, where the people have organized themselves under color of law into the ordinary municipal bodies, and have gone on year after year raising taxes, making improvements, and exercising their usual franchises, their rights are properly regarded as depending quite as much on the acquiescence as, on the regularity of their origin, and no *ex post facto* inquiry can be permitted to undo their corporate existence. Whatever may be the rights of individuals before such general acquiescence, the corporate standing of the community can be no longer open to question. See *Rumsey v. People*, 19 *N. Y.* 41, and *Lanning v. Carpenter*, 20 *N. Y.* 447;

where the effect of the invalidity of an original county organization is very well considered in its public and private bearings. There have been direct legislative recognitions of the new division on several occasions. *Laws*, 1858, *p.* 23; *Laws*, 1861, *p.* 556; *Laws*, 1863, *p.* 22. The exercise of jurisdiction being notorious and open in all such cases, the state as well as county and town taxes being all levied under it, there is no principle which could justify any court at this late day in going back to inquire into the regularity of the law of 1857.

. The conclusion, then, is inevitable, that the act to organize the county of Washington can not of itself work any such organization, and, unless aided by the subsequent statute, must fall. It was enacted for no purpose but that of organizing the new county.

The second statute provides for the organization of the town of Negaunee in the county of Washington, by adopting an existing township. It provides, therefore, the means of holding one township . election. But it makes no provision whereby the electors of the rest of the county can vote, and it deprives of their suffrages the inhabitants of a portion of Marquette county. And it is claimed by the Attorney General that a county can not be organized under such provisions. `

Leaving out of view the consequences in Marquette county, the result of this legislation would be to give the people of the single township of Negaunee the right to elect the whole body of county officers, and would cut off from the right of voting, not only now but forever — unless the legislature should intervene — a considerable body of electors who have hitherto had the means of exercising that right. And it would have the further effect of leaving this county with only one supervisor.

The constitution requires the county officers to be chosen in each county "*by the electors thereof*," and, as has

already been seen, each man must vote in his own township. We held in the case of the *Attorney General v. Supervisors of St. Clair*, 11 *Mich.* 63, that a law which provided no means for taking votes in cities upon the question of the removal of a county seat was invalid, although all the townships had the opportunity of voting. We think this case comes within the same principle, and that the deliberate exclusion of the electors outside of Negaunee was illegal.

We also think that no county organization can be complete without more than one township. There is no method by which one supervisor can be legislated or construed into a "board." The powers of the board are of the most important character, and it is designed that every part of the county should be represented by its members. Their duties are such as are never allowed to be exercised by single persons, and this is the first instance in our history where the legislature have acted (if they really did so act) upon the theory that such a delegation of authority to one officer was possible. The board of supervisors is one of our long established institutions, and no one can doubt, in reading the constitution, that it was designed to be perpetuated in its existing form, as an aggregation of town officers, and not as a single individual.

The intrinsic defects of the first act are not aided by the second. Neither can stand alone. And we are compelled to the conclusion that no change has been legally made in the organization of Marquette county. It follows that the old treasurer was not removed from office, and there was no vacancy to be filled. The appointment of the respondent was therefore unauthorized, and judgment of *ouster* must be entered against him; the demurrer not being well taken, and the pleas also being insufficient.

MARTIN Ch. J. and CHRISTIANCY J. concurred.

COOLEY J.

If this proceeding had been instituted against the officers assuming to act as the county officers of Washington county, and who would have been interested in presenting all the considerations which might tend to defeat it, I should have felt less reluctance in entering upon a full examination of all the points involved.   But as it is doing no injustice to any one to say that this is not an adversary proceeding, and the parties who would have been defendants in a more direct attempt to reach the same end, have declined to speak to the present record, I prefer to reserve an opinion upon some of the very grave questions involved until a case shall arise rendering a decision necessary.

I agree with my brother, Campbell, that the two acts of the legislature, now in question, do not, of their own force, organize the county of Washington, or provide any machinery by means of which such organization can be effected without further legislation.   I put my concurrence upon the ground that there can not be an organized county with a single township only, nor a board of supervisors with only one member.   The powers conferred upon that body by the constitution are of very high importance; some of them, legislative in their character, requiring consultation, discussion and deliberation; and such as in no part of our political system are conferred upon single individuals.   The implications from the constitution are all strongly against any intention that such large and varied powers should be thus concentrated; and the term "board," in its derivation as well as in its ordinary use, indicates a deliberative body, composed of more than one person. Without, therefore, considering whether there is any constitutional infirmity in either of the acts in question, which would render it invalid, I think the people are entitled to judgment for the reason stated.