## AUSTRIAN v. GUY.

*(Circuit Court, W. D. Wisconsin. August, 1884.)*

1. MUNICIPAL CORPORATIONS—ORGANIZATION OF TOWN OF ASHLAND—WIS. REV. ST. 1858.

    The organization of the town of Ashland, in Ashland county, Wisconsin, was valid and legal, although the orders of the county board in setting apart certain territory, and designating the boundaries thereof, to form said town, were not in the exact language of the statute. Wis. Rev. St. 1858, c. 13, §§ 28, 30.

2. SAME—COLLATERAL ATTACK—ACTION TO SET ASIDE TAX DEED.

    Where the original orders organizing a town are invalid, after the lapse of a period of more than 10 years, the validity of such organization and its authority to levy taxes cannot be questioned collaterally in a proceeding by the alleged owner of town lots to remove a cloud on his title caused by a tax deed issued to a purchaser at a tax sale for taxes levied by such town.

At Law.

*Willis & Willard*, for plaintiff, with *S. U. Pinney*, of counsel.

*Tompkins & Merrill*, for defendant.

BUNN, J. This is an action of ejectment brought by the plaintiff, a citizen of Minnesota, against the defendant, a citizen of Kansas,

to recover certain village lots situate in Austrian's addition to the village of Ashland, in Ashland county, Wisconsin. It is stipulated that the plaintiff shows a complete title to the lots in question, subject to the defendant's defense, who claims to hold the same by virtue of certain tax deeds issued to the county of Ashland under a sale of said lots for the general state, county, and town taxes for the years 1873, 1875, and 1876, levied by the town of Ashland, in said county. It also appears that the tax deeds under which the defendant holds are fair and valid upon their face, and that the statute of limitations provided by the laws of Wisconsin for bringing ejectment to recover the lands had run upon the deeds prior to the commencement of the action on September 22, 1883.

The plaintiff, to avoid the tax deeds under which the defendant claims title, attacks the organization of the town of Ashland, alleging such organization to be invalid, and that there was consequently no authority for levying the taxes. The evidence bearing upon this issue is contained in the stipulation of the parties on file, presenting among other things, a copy of the record of the board of county supervisors of Ashland, appertaining to the setting off and organization of said town by such board. By this record it appears that the first action of the board was taken on May 27, 1872. I quote such parts of the record as bear upon this question:

"MAY 27, 1872. At a special meeting of the county board of supervisors of Ashland county, held this twenty-seventh day of May, 1872, for the purpose of organizing the new board lately elected in April last, and also for to decide and take into consideration the application of the settlers or citizens of the newly-settled portion of the town of La Pointe, now residing in Ashland and its additions, for to set off as a separate town organization, to be called the town of Ashland, in the county of Ashland, in the state of Wisconsin, the whole of the members of the new board being present, viz., John W. Bell, etc., [naming all the members of the board,] the clerk lately elected being absent, Mr. Le Montferand and Joseph Reille were appointed by the board as clerks of the meeting, to record their proceedings and decisions of the meeting, which were as follows: That after due consultation it is mutually understood, ordered, and decreed that the following described boundaries are hereby, by the action of this board, set off as a separate town, to be called the town of Ashland, and that the legal voters residing upon the lands hereby set off are hereby authorized to hold a first election to elect their respective officers on the twenty-seventh day of June for the town of Ashland, after publishing the necessary notices, according to the now-existing laws, namely, within the limited boundaries: Bounded on the south by the south line of town forty-six, (46,) on the east by the Indian reservation, on the west by Bayfield county line, and on the north by the northern line of township No. forty-eight, (48.)

"JUNE 10, 1872. At a special meeting of the county board held this tenth day of June, 1872, for the purpose of reconsidering the action of the board on the twenty-seventh day of May last, in relation to the setting off and organizing the town of Ashland, the board being all present, Mr. Le Montferand was appointed clerk *pro tem* for the purpose of recording the proceedings of this meeting.

"It appearing to the board that they have not set off sufficient territory to cre-

ate or raise a sufficient revenue to support said organization, and make the necessary improvements, etc., requisite in a new town, it is hereby ordered and decreed that the following townships be added to and annexed to the decree of the twenty-seventh day of May last, for the purpose therein mentioned, namely, townships numbered forty-five and forty-four of range four west, and that the election of the town officers be held at the store of James Wilson, in the town of Ashland, on the twenty-fourth day of June, 1872, in accordance with the decree of May 27, 1872.

"JULY 2, 1872. At a special meeting of the county board of supervisors of Ashland county, held on the second day of July, A. D. 1872, John W. Bell, chairman, John Stewart, supervisor, and Joseph Reille, clerk of the board, being present, and the meeting being duly organized, after due consideration it was ordered and decreed that the following described territory be set off as a new town, to be named the town of Ashland, viz.: Townships 44, 45, and 47, in range 4; also fractional township 48, in range 4, in Ashland county; and that the legal voters therein are hereby authorized and empowered to hold an election at the office of J. M. Matthews, in the town of Ashland, on the thirteenth day of July, 1872, for the purpose of electing the respective town officers requisite for a full town organization; said meeting to be held in accordance with the now-existing laws in regard to town organization. The action of the board this day takes precedence of all prior actions in relation thereto."

There are no further proceedings touching the organization of the town until the annual meeting, held November 10, 1874. On that day the following was had:

"The petition for the readjustment of the boundaries of the respective towns was taken up and considered. The following resolution was presented by W. R. Durfee: 'Ordered and determined, by the county board of supervisors of Ashland county, that there be, and hereby is, set off from the town of La Pointe, and added to the town of Ashland, all the following described territory, to-wit:'" [Here follows a long description of the townships set off.]

The next record is:

"MARCH 27, 1875. The county board of supervisors, pursuant to adjournment, met at the county office, March 27th, at 9 A. M. There were present, J. W. Bell, chairman; S. S. Fifield, supervisor; Chas. H. Pratt, county clerk. S. S. Fifield presented the following resolution, which was adopted: 'Resolved, by the county board of supervisors of the county of Ashland, that they do order and determine that there be, and hereby is, set off from the town of La Pointe, and annexed to the town of Ashland, the following territory, to-wit: All of township forty-three (43) north, range four (4) west; all of township forty-five (45) north, range three (3) west; all of township forty-four (44) north, range three (3) west; all of township forty-three (43) north, range three (3) west; all of township forty-five north, range two (2) west; all of township forty-four (44) north, range two (2) west; all of township forty-three, (43,) range two (2) west; all of township forty-five (45) north, range one (1) west; all of township forty-three (43) north, range one (1) west,—and the same is hereby declared to be a part of the town of Ashland, in the county of Ashland.'"

The next record is as follows:

"APRIL 20,1875. Minutes of a special meeting of the board of supervisors of the county of Ashland called according to law, and held at the county clerk's office on the twentieth day of April, 1875, at 9:15 A. M. Present, W. R. Durfee, Ashland, supervisor; J. W. Bell, La Pointe, supervisor; J. H.

Shutt, county clerk.  On motion of Mr. Bell, W. R. Durfee was chosen chairman for the ensuing year.  The action of the board at the annual meeting held November 14, 1874, setting off certain territory from the town of La Pointe, and annexing it to the town of Ashland, was considered, and amended to read as follows: 'It is ordered and determined, by the county board of supervisors of Ashland county, that there be, and is hereby, set off from the town of La Pointe, and annexed to the town of Ashland, all the following described territory, to-wit: [Here follows a description of the townships set off.]  And that all the following described territory be, and is hereby, set off from the town of Ashland and annexed to the town of La Pointe, to-wit:' [Here follows a description of lands added to the town of La Pointe.]  The board of supervisors of Ashland county do order and determine as follows: 'That from and after the publication of this order the town of Ashland shall comprise and contain the following townships and territory, to-wit:'" [Here follows a description of the township, with a further order describing the territory to be contained in the town of La Pointe, also.]

1. After a careful study of the above record, though there are some informalities in the proceedings, the court is of opinion that it shows the legal organization and existence of the town of Ashland, and a consequent authority to levy the taxes in question.

By the laws of Wisconsin the assessment of real estate is made between the first day of May and the last Monday in June, when the board of review meet.  As will be noticed, all of the above proceedings of the county board of Ashland county, directed to the organization of the town of Ashland, or looking to a recognition by the county board of its existence as a town by virtue of any former proceedings, were had prior to the month of May, 1875, after which time the last two taxes were assessed and levied.  The action of the county board of May 27, 1872, and July 2, 1872, were all prior to the levying of the first tax in May or June, 1873.

The plaintiff's objections to the legality of the organization of the town are substantially:

(1) That the various orders of the county board, looking to that end, are not in the form prescribed by law, and have no enacting clause; (2) that they are not orders proper, purporting to be in the present tense, but were recitals of what was done in the past; (3) that they do not disclose in themselves the authority by virtue of which they were made; (4) that the provisions of section 31 of chapter 13 of the Revised Statutes of Wisconsin for 1858, requiring the distribution of newspapers containing the publication of the said orders, were not complied with; (5) that the first order of May 27th does not designate the place of holding the first town meeting.

There are other objections, but these are of the substance, and all that I care to notice.

Among the special powers conferred upon county boards by section 28 of chapter 13 of the Revised Statutes of 1858, is the one "to set off, organize, vacate, and change the boundaries of towns in their respective counties.  *  *  *  And section 30 provides for the publication of all orders made under section 28.  Section 29 provides that all orders and determinations by which the provisions of the next preceding section (28) shall be carried into effect, shall be in

the ordinary form of laws passed by the legislature of the state, and shall commence as follows: "The board of supervisors of the county of —————— do order and determine as follows."

In *Smith* v. *Sherry*, 54 Wis. 114, S. C. 11 N. W. Rep. 465, the supreme court of Wisconsin held that the above provisions, prescribing the form and publication of the order, are mandatory, and must be substantially followed. The order in that case was:

"On motion of Carl Schmidt the board of supervisors do order and determine that town 28, range 14, be attached to the town of Herman for town purposes, and that town 28, range 13, be attached to the town of Seneca for town purposes."

In that case the order was not published, and the court say that they are of the opinion that the attempt to attach the township in question to the town of Seneca, by the unpublished order and determination referred to, was ineffectual to accomplish the purpose. The court in their opinion seem to base their decision mainly upon the fact of the order not being published as required by law, which was certainly a substantial ground for the conclusion reached, and I think the decision turned upon that question, rather than on the form of the order. But they say, also, that the order passed was not in the form prescribed, but substantially different, and that it attempted to attach one piece of territory to one town and another to another town on mere motion. This is all that is said in regard to the form of the order, and whether the court, if the order had been properly published, would have held it void because adopted on the motion of a member of the board, we cannot know. I cannot think the court would have so held, provided the order had been in other respects in the form prescribed, and had been published, because these matters are usually brought up for consideration by the board in that manner, and there would seem to be no valid reason why they should not be. And in the previous case of *Hart* v. *Gladwell*, 49 Wis. 172, S. C. 5 N. W. Rep. 323, such an order, adopted upon motion, was held valid. The decision, of course, was made with reference to the facts of the case. Perhaps a safer objection to the form of the order in that case would be that it does not appear to have been adopted by the board of supervisors of the county of Shawano. I have referred to this decision more particularly as it is relied upon by the plaintiff as an authority in point in this case, to show that the various orders of the county board of Ashland county were invalid and ineffectual. Undoubtedly the court was right in holding that the provisions of the statute requiring a publication of the order before it should take effect, were mandatory and must be substantially complied with. Perhaps, also, the provision in regard to the particular form of the order is mandatory. If so, the question in the case at bar would be, has the statute in regard to the form of the order been substantially complied with? and if not, has the subsequent repeated recognition of the existence of the town

of Ashland by the county board cured the original defect in the order organizing the town?

It is stipulated that the orders were published, but that the copies of the papers containing such publication were not distributed by the clerk of the board to the various town clerks, as provided by section 31. But this provision the supreme court held, in *State* v. *Pierce*, 35 Wis. 93, directory merely, and that a non-compliance did not vitiate the proceedings. Now, let us return to the record of proceedings and look at the first order of May 27, 1872.

This record shows clearly the authority to be the county board of the county of Ashland, and the order of such board is: "That after due consideration it is mutually understood, ordered, and decreed," etc. This is certainly not a literal compliance with the form prescribed by the statute. But is it not a substantial compliance? The words of the statutory form are "*ordered and determined.*" In the order made it is "*understood, ordered, and decreed.*" If the word "understood" may be rejected as surplusage, will not the words "ordered and decreed" mean the same, and pass in the place of "ordered and determined?" The question may not be free from doubt, but would it be wise for this court to put so strict a construction upon such a statute, and to interpret it in such a literal way as to hold such an order void, when words are used of substantially the same signification? Should the word "understood" vitiate the order? I think not; and that the words "ordered and decreed," as used here, are substantially of the same import as the words "ordered and determined."

In *Hart* v. *Gladwell*, 49 Wis. 172, S. C. 5 N. W. Rep. 323, there was a proceeding under this same section to alter a state road running through Chippewa county, and the board of supervisors appointed a committee to view and report. The committee, instead of viewing and reporting, assumed to make the contemplated change, caused a survey to be made, and filed an order for such change, and the question was whether the action of the committee had been adopted by the board. The court, by Chief Justice COLE, says:

"The evidence as to the proceedings of the board shows that at the meeting of June 14, 1878, Supervisor Hemmelsbuck moved that the report of the 'road committee be accepted and the committee discharged, which motion was carried.'"

Here it seems the whole business was done upon motion, as in *Smith* v. *Sherry*, but the court held the proceeding valid, and, in commenting upon the form of the order, say:

"This may not be the language which one experienced in parliamentary proceedings would use in a resolution for adopting a report as the act of the board; but there can be no doubt that this was the intent and object of the resolution. The whole proceedings of the committee in respect to changing the road, causing a survey thereof to be made, and making an order laying out the new road, were all before the board for consideration, and were approved and adopted. It will not do to apply to the orders and resolutions of

such bodies nice verbal criticism and strict parliamentary distinctions, because the business is transacted generally by plain men not familiar with parliamentary law.   Therefore their proceedings must be liberally construed in order to get at the real intent and meaning of the body."

In this language and doctrine this court fully concurs, and, applying the same doctrine to the case at bar,—and I think it an authority quite in point, being made under the same statute by the court who has the best right to interpret it,—it seems tolerably clear that the original order of the board of May 27, 1872, was a valid order. See, also, *State* v. *Crawford Co.* 39 Wis. 596.   As to the objection that this order does not fix the place of holding the town meeting, it is enough to say that this would not vitiate the proceedings, as the place might be designated afterwards, as was done by the subsequent orders of the county board.   There is nothing in the law requiring it to be done in the same order.   The act of June 10, 1872, adding more territory, is the first subsequent recognition by the board of the existence of the new town of Ashland.

The order of July 2, 1872, is, in form, substantially as that of May 27th, and is intended to take the place of the former proceedings touching the organization of the town.   It is objected to this order that it runs partly in the past tense, "*was ordered and decreed,*" instead of "*is ordered and determined;*" but this is, probably, a mere clerical error, as in the subsequent part of the order a return is made to the present tense, "are hereby authorized" in place of "were hereby authorized."   It would be trifling to hold that mere mistakes of grammar should invalidate such proceedings.   I think the order valid, but if invalid and ineffectual for the purpose of creating a town or adding new territory, it must also be invalid for the purpose of vacating a town already created by the previous order, if such town was so created.

There is less objection to the form of the subsequent orders of November 10, 1874, March 25, 1875, and April 20, 1875.   Indeed, that of April 20, 1875, seems quite unobjectionable in form.   It is as follows, omitting the description of territory: "The board of supervisors of the county of Ashland do order and determine as follows: That from and after the publication of this order the town of Ashland shall comprise and contain the following territory and townships, *to-wit.*" But it is said these late ordinances do not purport to create and organize the town of Ashland, but only to assume its previous existence by adding and detaching territory, and defining its boundaries. This is true, but I think they constitute a clear and unmistakable recognition of the previous existence of such town by a body who had full legislative power to create it, and, as such, have the effect to cure any irregularity in their previous action setting off such town. *Sup'rs La Pointe* v. *O'Malley,* 47 Wis. 332; S. C. 2 N. W. Rep. 632. And if the board had power, in the first instance, to organize the town, it would probably have power, by a subsequent ordinance, to

ratify such defective organization. *Hart* v. *Gladwell, supra,* where the court say: "As the board had the power to grant full authority in the first instance, upon familiar principles, it might ratify and confirm the unauthorized acts of its committee, as it did do." It also appears that the existence of such town has been recognized by the state in different forms: (1) By receiving its quota of taxes for the past 12 years, and making no question in all that time of the legality of its organization; (2) by chapter 74, Gen. Laws 1883, §§ 5, 6, attaching certain territory to it, and providing for the adjustment of certain indebtedness. See *Bow* v. *Allenstown,* 34 N. H. 351.

2. It is stipulated in the record that at the time of the organization of Ashland county only two towns existed in the territory included by the legislature therein, to-wit, La Pointe and Bayport; that the town organization of said town of Bayport ceased to exercise any of the functions of a town in January, 1867, and no town organization known as the town of Bayport has since that time exercised, or claimed to exercise, the functions of a town, but the so-called town of Ashland has exercised undisputed control over all the territory formerly comprised in said town of Bayport ever since July, 1872; that the taxes, for the non-payment of which the tax sales were made under which defendant claims title, were assessed and levied by and under the authority of certain persons, styled in such tax proceedings officials of the county of Ashland and of the town of Ashland, and said persons were at such times exercising all the functions of such officers, and claiming to be such officials, and recognized as such; that the town so attempted to be organized has exercised all the powers, functions, and franchises of a town, and been recognized as the town of Ashland by the officers of said county and the public, and has acted as a town ever since July, 1872, and all the persons acting officially in said tax proceedings exercised the functions proper to the several offices which they claimed to hold.

Under these circumstances, the question is distinctly presented whether—supposing the original orders creating the town of Ashland to be so defective and irregular as to be invalid for that purpose, in the first instance—the plaintiff, after such a lapse of time, can question the legality of the organization of the town in a collateral proceeding; and, after a pretty thorough consideration of the question, the court is of opinion that he cannot.

And without stopping to discuss the question, as this opinion is already much longer than I intended it should be, I shall content myself with referring to some of the authorities I have consulted in the examination and decision of this case.

I do not find much real conflict in the cases on this question, though none of them presume to fix any certain time after which such organization cannot be questioned collaterally, and no doubt it would be unwise if not impossible for the court to make any general rule on the subject, as each case must be governed in part by its own cir-

cumstances. In this case the town of Ashland organized under the orders of the board of supervisors, assuming to create such town, in July, 1872, and has exercised all the powers and functions of a town *de facto* since that time, and for upwards of 11 years previous to the time of the commencement of this action, in September, 1883, has all that time been recognized by the county board of supervisors of Ashland county, and by the state and public at large, as one of the towns of the state, has been for that time acting under color of law, and its existence never questioned by the state. In these circumstances it would at first view be strange indeed if a private party in a collateral proceeding could question its corporate existence.

Chapter 54, Gen. Laws Wis. 1883, passed six months prior to the commencement of this action, provides, among other things, that "every town shall be considered and held to be and to have been duly organized, which has exercised or which shall hereafter exercise the powers, functions, and franchises of a town for a period of two years;" and, further, that "the validity of any order, ordinance, or proceeding purporting to organize or set off any new town, or to change the boundaries of any existing town or towns, may be tested by *certiorari*, or any other proper proceeding brought directly for the purpose of vacating such order, ordinance, or proceeding by a proper officer or by any person owning taxable property in any town purporting to be so organized, set off, enlarged, or diminished, at any time within two years after the date of such order, ordinance, or proceeding, or within 60 days after the publication of this act, in cases wherein the two years above limited shall have elapsed prior thereto, or shall expire during said 60 days, and not thereafter. No such order, ordinance, or proceeding shall in anywise be called in question in any action or proceeding, except one brought directly for that purpose within the time above limited, and except in the case wherein such order, ordinance, or proceeding shall have been vacated by a court of competent jurisdiction."

It is objected to this act that the limitation of 60 days is invalid, as not giving a reasonable time to bring an action directly to test the validity of the proceedings. Allowing this to be so, it does not follow that the other provisions of the act are inoperative. The statute is not simply a statute of limitation. The first provision is of a curative character, which the legislature undoubtedly might make. The other provision, that no such order, ordinance, or provision shall in anywise be called into question in any action or proceeding except one brought directly for the purpose, seems to be only a legislative affirmance and recognition of the general rule of the common law on the subject as settled by the weight of authority. At any rate, it shows the legislative policy of the state upon the subject, which it is the duty of the courts to respect. See *Sherry* v. *Gilmore*, 58 Wis. 324; S. C. 17 N. W. Rep. 252; Dillon, Mun. Corp. (3d Ed.) 61; *People* v. *Maynard*, 15 Mich. 470; *Mendota* v. *Thompson*, 20 Ill. 197; *Hamilton* v.

*Carthage,* 24 Ill. 22; *Tisdale* v. *Minonk,* 46 Ill. 9; *Stuart* v. *School-dist. No. 1, Kalamazoo,* 30 Mich. 70; *School-dist.* v. *Joint Board,* 27 Mich. 3; *Rumsey* v. *People,* 19 N. Y. 41; *City of St. Louis* v. *Shields,* 62 Mo. 247; *Town of Geneva* v. *Cole,* 61 Ill. 397; Cooley, Const. Lim. (5th Ed.) 311.

In *Stuart* v. *School-dist.* 30 Mich. 69, which was an action brought by a private party against a school-district nominally to restrain the collection of taxes levied by the district, but really to call in question the corporate existence of such school-district, Judge COOLEY uses the following language, which seems quite applicable to the case at bar:

"To require a municipal corporation, after so long an acquiescence, to defend in a mere private suit the irregularity, not only of its own action, but even of the legislature that permitted such action to be had, could not be justified by the principles of law, much less by those of public policy. We may justly take cognizance in these cases of the notorious fact that municipal action is often exceedingly informal and irregular, when after all no wrong or illegality has been intended, and the real purpose of the law has been had in view and been accomplished, so that it may be said the spirit of the law has been kept while the letter has been disregarded. We may also find in the statutes many instances of careless legislation under which municipalities have acted for many years until important interests have sprung up which might be crippled and destroyed if then, for the first time, matters of form in legislative action were suffered to be questioned. If every municipality must be subject to be called into court at any time to defend its original organization and its franchises at the will of any dissatisfied citizen who may feel disposed to question them, and subject to dissolution, perhaps, or to be crippled in authority and power if defects appear, however complete and formal may have been the recognition of its rights and privileges on the part alike of the state and its citizens, it may very justly be said that few of our municipalities can be entirely certain of the ground they stand upon, and that any single person, however honestly inclined, if disposed to be litigious or over technical and precise, may have it in his power in many cases to cause infinite trouble, embarrassment, and mischief."

So, also, in my judgment, are the remarks of Mr. Justice CAMPBELL in *People* v. *Maynard,* 15 Mich. 470, where he says:

"In public affairs, where the people have organized themselves, under color of law, into the ordinary municipal bodies, and have gone on year after year raising taxes, making improvements, and exercising their usual franchises, their rights are properly regarded as depending quite as much on the acquiescence as on the regularity of their origin, and no *ex post facto* inquiry can be permitted to undo their corporate existence. Whatever may be the rights of individuals *before such general acquiescence,* the corporate standing of the community can no longer be open to question."

With the doctrine of these cases I fully concur, and am of opinion the like considerations are fully applicable to the case at bar.

There will be a judgment for the defendant.